**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-02460-GPG-STV

TODD ROWELL, in his individual capacity,
MATTHEW KING, in his individual capacity, and
CURTIS BRAMMER, in his individual capacity,

      Plaintiffs,

v.

PHILIP WEISER, in his official capacity as the
Attorney General for the State of Colorado, and
JARED POLIS, in his official capacity as the
Governor for the State of Colorado,

      Defendants.

---

**MOTION TO DISMISS BY ATTORNEY GENERAL PHILIP WEISER AND
GOVERNOR JARED POLIS**

---

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................1

BACKGROUND ..................................................................................................2

LEGAL STANDARDS...........................................................................................6

ARGUMENT......................................................................................................6

I.  Plaintiffs' claims are not justiciable. ........................................................6

    A.  Plaintiffs lack standing. .................................................................7

    B.  Plaintiffs' claims are not ripe. .....................................................10

        1.  Plaintiffs' claims are not fit for judicial review. ...........11

        2.  Withholding review will not impose hardship on Plaintiffs. ..........12

II.  Claims against the governor are barred by sovereign immunity. ........13

III.  The challenged laws are not void for vagueness under the U.S. Constitution (Count I). ........15

    A.  Plaintiffs' cannot meet the demanding standard required to facially invalidate a civil statute for vagueness. ........15

    B.  The challenged laws do not implicate Plaintiffs' First Amendment rights or heightened scrutiny........19

    C.  The challenged provisions' scienter requirement further supports dismissal of Plaintiffs' vagueness challenge. ........20

IV.  The challenged laws are not void for vagueness under the Colorado Constitution because the standard is materially identical (Count IV)....21

V.  Federal law does not preempt the challenged laws (Count II)...........22

    A.  There is no conflict between federal and state law. ........24

        1.  The challenged laws mandate compliance with federal law and do not conflict with federal law. ........24

        2.  The preemption claim is premised on an anti-textual reading of §§ 1373 and 1644 that has been rejected by every court. ........25

        3.  Plaintiffs cannot rely on obstacle preemption to create a conflict that does not exist. ........27

    B.  Plaintiffs do not rely on any valid preemption provisions........28

    C.  Accepting Plaintiffs' position would violate the Tenth Amendment. ........28

VI.  There is no separate cause of action under the Declaratory Judgment Act (Count III). ........30

CONCLUSION ............................................................................................................ 30

## INTRODUCTION

Exercising Colorado's Tenth Amendment sovereign powers, the General Assembly enacted several laws directing that the state's limited law enforcement resources be focused on enforcing criminal laws and protecting Coloradans, not doing the federal government's job of enforcing immigration laws. *See, e.g.*, Colo. Rev. Stat. § 24-74-101. Mesa County sued to challenge those laws, but its case was dismissed because it lacked standing. *Douglas County v. Colorado*, 24CV31125 (Denver Dist. Ct. Dec. 16, 2024). The County is back, this time funding litigation by three County employees, purportedly in their individual capacities.[1] *See* ECF No. 1 ("Compl.").

The County's attempt to plead around its earlier loss is unavailing. None of the claims are justiciable because Plaintiffs lack standing and the claims are not ripe. Nearly all the alleged harms are purported injuries to the operations of the Mesa County Sheriff's Office, for which Plaintiffs have no cognizable interest in their individual capacities. The remaining alleged harms involve speculation about hypothetical future enforcement actions. Emphasizing the lack of an actual case or controversy, Plaintiffs identify a list of hypothetical questions for which they seek advisory opinions. And all claims against the Governor are barred by sovereign immunity.

Even if the Court were to reach the merits, the claims fare no better. First, the challenged laws are not void for vagueness. Under federal and state law, a due process challenge against a civil statute fails unless the law is "'so vague and indefinite as really

---

[1] https://www.mesacounty.us/news/commissioners/mesa-county-commissioners-authorize-legal-filing-protect-local-law-enforcement.

to be no rule or standard at all.'" *Boutilier v. INS*, 387 U.S. 118, 123 (1967). Plaintiffs'

burden here is even higher because they bring a facial challenge, and because the laws

contain a scienter requirement. Instead of meeting this demanding standard, Plaintiffs

argue that the laws are vague because they do not specifically define common terms

such as "disclose" or provide guidance for certain hypothetical scenarios. Compl. ¶¶ 29,

36, 44, 46. These arguments misunderstand the applicable standard.

Finally, the preemption claim lacks merit because the challenged laws do not

conflict with federal law, there are no valid preemption provisions, and accepting these

arguments would run afoul of the Tenth Amendment anticommandeering principle.

For all these reasons, the Complaint should be dismissed.[2]

## BACKGROUND

Plaintiffs challenge several Colorado statutes governing the collection and

disclosure of Colorado residents' personal information by state agencies and political

subdivisions. The statutes serve several purposes: (1) to avoid the unnecessary

collection of private data and ensure that Coloradans "feel welcome to receive state and

local services without fear of abuse of their privacy or data," C.R.S. § 24-74-101(a)–(d);

and (2) to prioritize and limit the use of Colorado's law enforcement resources by not

volunteering them "to enforce or administer a federal regulatory program," namely

federal immigration enforcement, *id.* § 24-74-101(g). The General Assembly recognized

not only the need to preserve state resources, but also the concern that involving state

agencies or political subdivisions in "enforcing federal immigration laws can undermine

---

[2] The parties conferred on October 27, 2025, regarding the grounds for this motion.

public trust and deter persons from accessing" critical state services. *Id.* § 24-74-101(e).

The General Assembly emphasized that the laws were "not intended to interfere with

criminal investigations and proceedings authorized by judicial process" and included

express carve-outs for compliance with federal or state law. *Id.* § 24-74-101(h).

Accordingly, through Article 74, the General Assembly:

(1) restricted state agencies and political subdivisions from collecting certain personal information not "required by state or federal law" or "necessary to perform" official duties, *id.* § 24-74-104(1), (2);

(2) prohibited state agencies and political subdivisions from disclosing or making accessible non-public "personal identifying information" "for the purpose of investigating for, participating in, cooperating with, or assisting in" civil immigration enforcement, "except as required by federal or state law," *id.* § 24-74-103(1); and

(3) to ensure good-faith compliance efforts, subjected state and local subdivision employees who "intentionally violate[] [the] provision[s] of this article 74" to an injunction and potential civil penalty, *id.* § 24-74-107(1).

Article 74 specifically applies only "while acting in the person's employment capacity,"

not in their individual capacity. C.R.S. § 24-74-102(1.6), (4).

The Complaint brings a facial challenge to these three statutes (collectively

referred to as the "challenged laws"). Plaintiffs are three political subdivision employees

who work for the Mesa County Sheriff's Office ("MCSO"), including the elected Sheriff,

the Undersheriff, and a Captain. Compl. ¶¶ 7–9. Plaintiffs purport to bring all claims only

in their individual capacities. *Id.* Yet nearly all the alleged harms by Plaintiffs relate

purely to their official capacity, such as "confusion among law enforcement agencies,"

lessened cooperation by the MCSO with federal law enforcement agencies, loss of

grant funding to the MCSO, and "proscriptions on job-related activities." Compl. ¶¶ 4–5.

3

In addition, Plaintiffs allege vague concerns that they could, at some unknown point in the future in some undefined way, be subject to an enforcement action. For example, Plaintiffs allege that they participate in several task forces with federal law enforcement agencies that are dedicated to criminal investigations and enforcement. *Id.* ¶ 95. But the law provides: "This article 74 shall not interfere with criminal investigations . . . or . . . restrict a state agency employee or political subdivision employee from fully investigating, participating in, cooperating with, or assisting federal law enforcement agencies in criminal investigations." C.R.S. § 24-74-103(2). Plaintiffs nonetheless state a vague concern that they could face liability under Article 74, notwithstanding this express language, because they share "PII with federal law enforcement agencies for purposes of joint criminal investigations." Compl. ¶ 17, 102, 105, 146–47.

Plaintiffs also allege that their Colorado state law duties—including administering concealed gun permits, conducting jail background checks, and transporting prisoners—require them to collect and share information with law enforcement databases to meet statutory obligations and for criminal law enforcement purposes. Compl. ¶¶ 58–62, 106–30. Article 74 again excludes any collections "required by state or federal law or as necessary to perform state agency or political subdivision duties." C.R.S. § 24-74-104(1), (2). Plaintiffs allege that all the collections are to perform official duties and that information sharing is to comply with state law and for law enforcement, non-immigration purposes. Compl. ¶¶ 58–62, 72–73, 80, 84, 91–92, 100, 106–30. Plaintiffs do not allege that any of their conduct violates the challenged laws.

4

The Complaint further alleges that Plaintiff Brammer was disciplined by the MCSO arising from a traffic stop by a Deputy who provided personal identifying information ("PII") to federal immigration authorities. Compl. ¶¶ 143–145. Plaintiff Brammer's discipline entailed a "Documentation of Verbal Counseling," which states:

(1) The MCSO conducted an investigation that revealed misconduct by two employees (not Plaintiffs) involving "a series of incidents" where those employees were assisting HSI/ICE agents "solely for the purposes of enforcing civil immigration violations." This conduct was found by the MCSO to be in violation of multiple office directives and Colorado law.

(2) Plaintiff Brammer was verbally counseled due to his supervisory role, which included a discussion of how the community "unnecessarily lost trust in the Sheriff's Office" from those actions.

Ex. 1.[3]

The Complaint also alleges Attorney General Weiser is engaged in a "pattern or practice" investigation of a Signal chat group. Compl. ¶ 147. But Plaintiffs do not allege that any of them were part of that group. Plaintiffs offer a conclusory allegation that they are "at risk" for penalties and harm, without offering any factual basis. Compl. ¶ 146.

The Complaint contains four counts. Counts I and IV allege that the challenged laws are impermissibly vague under the due process clauses of the U.S. and Colorado Constitutions. Compl. ¶¶ 153–58, 169–74. Count II alleges the challenged laws are preempted by federal law. Compl. ¶¶ 159–62. Count III purports to bring a claim under

---

[3] The Court may review this document because it is incorporated by reference in the Complaint, *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013), and, alternatively, as part of a factual jurisdictional challenge, *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023). The MCSO publicly released this document. https://coag.gov/app/uploads/2025/10/Curtis-Brammer-Documentation-of-Verbal-Counseling.pdf

the Declaratory Judgment Act. Compl. ¶¶ 163–68. Plaintiffs seek a declaration that the challenged laws are unconstitutional, or in the alternative, advising that the laws should be interpreted per Plaintiffs' desired reading. Compl. pp. 29–30.

## LEGAL STANDARDS

A complaint may be dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1). "When resolving a facial attack on the allegations of subject matter jurisdiction, a court must accept the allegations in the complaint as true." *Graff*, 65 F.4th at 507. "When the moving party attacks the factual basis for subject matter jurisdiction, on the other hand, a court 'may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts.'" *Id.*

Rule 12(b)(6) permits dismissal of a complaint that fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court disregards labels, conclusory allegations, naked assertions, or formulaic recitations of the elements. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

## ARGUMENT

### I.    Plaintiffs' claims are not justiciable.

As a threshold matter, a court "must determine whether plaintiffs' claims are justiciable—that is, whether plaintiffs have standing to sue and whether their claims are ripe for judicial review." *Kan. Jud. Rev. v. Stout*, 519 F.3d 1107, 1115 (10th Cir. 2008). A plaintiff must demonstrate standing for each claim and form of relief sought. *Town of*

6

*Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017). The Court should dismiss the complaint because Plaintiffs lack standing and their claims are unripe.

### A.    Plaintiffs lack standing.

To have standing, Plaintiffs must show: (1) they "suffered an injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) there exists "a causal connection between the injury and the conduct complained of"; and (3) a favorable decision will likely redress the alleged injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation modified). The Supreme Court has repeatedly emphasized that the "threatened injury must be *certainly impending* to constitute injury in fact and that allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation modified).

*First*, Plaintiffs claim the challenged laws impact community safety and MCSO's investigatory capabilities and operational decisions. Compl. ¶ 4–6, 103–05, 129. But these claims assert alleged injuries to the MCSO, when Plaintiffs chose to sue in their individual capacities. Even if true, claims that MCSO decided to scale back voluntary collaboration with federal law enforcement, and their conjecture that these choices may result in lost grant funding or less effective investigations, do not reflect individual-capacity harms. An analogous suit by several Colorado sheriffs challenging state gun laws is instructive. There, the court rejected an identical standing argument based on the sheriffs' alleged belief that the laws would "compromise the performance of their office." *Cooke v. Hickenlooper*, No. 13-cv-01300-MSK-MJW, 2013 WL 6384218 at *11 (D. Colo. Nov. 27, 2013), *aff'd in part sub nom.*, *Colo. Outfitters Ass'n v. Hickenlooper*,

7

823 F.3d 537 (10th Cir. 2016). The court rejected this argument because the allegedly injured interests "[were] all incident to the functioning of a Sheriff's Office" rather than "individual rights of the person who serves as Sheriff."[4] *Id*. The same is true here.

Moreover, any purported decision by MCSO to "pull back" from engagements with federal law enforcement agencies is not traceable to Defendants' actions. *Lujan*, 504 U.S. at 560 (no standing based on third party decisions not traceable to defendant's challenged action); *see also Clapper*, 568 U.S. at 416 (rejecting standing "based on costs [plaintiffs] incurred in response to a speculative threat"). Nothing in the challenged laws prohibits participation in criminal task forces; to the contrary, they specifically allow and promote such activity. C.R.S. § 24-74-103(2). Even if Plaintiffs had an individual-capacity injury, it is not traceable to Defendants.

*Second*, Plaintiffs raise vague concerns that they could possibly face liability under the challenged laws at some point in the future. Compl. ¶¶ 17–18, 102, 112, 146–47, 152. But Plaintiffs repeatedly allege that they only collect information as required by state law or to perform their necessary duties and share information with federal officials for criminal investigations or as required by law. Compl. ¶¶ 58–62, 72–73, 80, 84, 91–92, 95, 100, 102, 106–30. Plaintiffs thus allege that they do not violate the challenged laws. *See* C.R.S. §§ 24-74-103(2). As a result, their allegations constitute only "conjectural" or "hypothetical" harms, *Lujan*, 504 U.S. at 560.

---

[4] The district court interpreted the sheriffs' complaint as brought in their official capacity. *Cooke*, 2013 WL 6384218 at *12. On appeal, the sheriffs argued that they were actually asserting claims in their individual capacity. But the Tenth Circuit affirmed the District Court's holding on standing, concluding that "the dismissed sheriffs failed to establish they had constitutional standing in *any* capacity." *Colo. Outfitters Ass'n*, 823 F.3d at 553.

Plaintiffs' allegation that the Attorney General opened a "pattern or practice" investigation into alleged misconduct involving a law enforcement Signal chat group also fails to establish a certainly impending, concrete injury. Compl. ¶147. Notably, Plaintiffs have not alleged that they were part of the Signal group chat, nor that they are under investigation.[5]  At bottom, speculation that the Attorney General could one day investigate Plaintiffs for violating the challenged laws, based on some unidentified and unknown future conduct, and then ultimately decide to bring a civil enforcement action cannot suffice to demonstrate a certainly impending injury. *Clapper*, 568 U.S. at 413.

*Finally*, the Complaint's reliance on Plaintiff Brammer's discipline is misplaced. The Complaint concedes that Plaintiff Brammer was "disciplined for failure to supervise" one of his deputies, not violation of the challenged statutes.[6] Compl. ¶ 145; *see also* Ex. 1. Any resulting harm was thus "the result of the independent action of some third party not before the court" and not "traceable to the challenged action of" the Defendants. *Lujan*, 504 U.S. at 560 (citation modified); *see also Habecker v. Town of Estes Park,* 518 F.3d 1217, 1226 (10th Cir. 2008) (finding no standing where a third parties'

---

[5] "[P]attern or practice" investigations cover "governmental authorit[ies]" or agents acting on behalf of a governmental authority. C.R.S. § 24-31-113. The Attorney General must notify the governmental authority and provide facts establishing reasonable cause to believe a violation has occurred. The Attorney General must then provide the governmental authority with a 60-day period to change or eliminate the identified pattern or practice. *Id.* These investigations are not against individuals in their personal capacities. Nor do Plaintiffs allege that any of these steps have occurred.

[6] Additionally, while the Complaint alleges that Plaintiff Brammer was harmed by being "disciplined," he was only provided counseling that emphasized, *inter alia*, "[t]he critical importance of following up with subordinate supervisors if there is any doubt they do not understand a directive." Ex. 1. But such "admonishment . . . does not support Plaintiffs' claim that they are threatened with employment sanctions" constituting an injury in fact. *Crane v. Johnson*, 783 F.3d 244, 254 (5th Cir. 2015); *see also, supra*, fn. 3.

"decision breaks the chain of causation between" Defendants' actions and the alleged injury). Moreover, any past harm cannot serve as the basis of future harm without a real and immediate threat of repeated injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). As reflected in the public discipline record, there is no basis for standing. Ex. 1.

### B.   Plaintiffs' claims are not ripe.

Plaintiffs' claims should also be dismissed because they are not ripe. "The purpose of the ripeness doctrine is to prevent the premature adjudication of abstract claims." *United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019). Ripeness has both a constitutional and a prudential component. Constitutional ripeness "is based on Article III's requirement that federal courts hear only cases and controversies" and requires a matter to come before a court in "clean-cut concrete form." *Id.* at 693 (citation modified). Constitutional ripeness is not satisfied if an alleged injury is not sufficiently imminent. *Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012). Since Plaintiffs have not alleged a "certainly impending" injury, *see* Sec. I.A., their claims are not constitutionally ripe. At bottom, the alleged harms are based on "'uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *SUWA v. Palma*, 707 F.3d 1143, 1158 (10th Cir. 2013).

Even if a case satisfies Article III's case or controversy requirement, a court "may still decline to review it under the prudential ripeness doctrine," based on: "(1) 'the fitness of the issue for judicial review' and (2) 'the hardship to the parties from withholding review.'" *Cabral*, 926 F.3d at 693 (quoting *United States v. Bennett*, 823 F.3d 1316, 1326 (10th Cir. 2016)). Here, Plaintiffs cannot satisfy either prong.

10

### 1.     Plaintiffs' claims are not fit for judicial review.

To analyze a claim's fitness, courts review whether determination of the merits "'requires facts that may not yet be sufficiently developed.'" *Cabral*, 926 F.3d at 693. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation modified). The ripeness doctrine "'prevent[s] courts from entangling themselves in [such] abstract disagreements' without concrete application to guide their analysis." *Cabral*, 926 F.3d at 694.

Plaintiffs' claims are the sort of abstract disagreements the doctrine seeks to avoid. Plaintiffs' claims rest upon multiple "contingent future events that may not occur . . . at all"—that they will intentionally violate the anti-commandeering laws, qualify for none of the exceptions, and that the Attorney General will decide to bring civil charges. *Texas*, 523 U.S. 300. But even if these future events occur, "[j]udicial review will then be available," and a court's assessment of the challenged laws "is likely to stand on a much surer footing in the context of a specific application" than a review based on Plaintiffs' speculative concerns lacking sufficiently developed facts. *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164, 166 (1967).

Plaintiffs' repeated demands for the Attorney General to offer formal guidance or an Attorney General Opinion, Compl. ¶ 141–42, 146, implicitly acknowledges that these claims are not ripe. What Plaintiffs seek is essentially an advisory opinion addressing a list of questions about the challenged laws. *See* Compl. ¶ 165. But "federal courts cannot give advisory opinions" and instead "the matter must come to the court in 'clean-

11

cut concrete form.'" *Cabral*, 926 F.3d at 693 (quoting *N.Ms. for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995)). Lacking any such "concrete application to guide [a court's] analysis," Plaintiffs' claims are not fit for judicial review. *Id.* at 694.

### 2.     Withholding review will not impose hardship on Plaintiffs.

As to the second prong, withholding review will not impose hardship on Plaintiffs. To succeed on this prong, a party must show it "face[s] 'a direct and immediate dilemma.'" *Bennett*, 823 F.3d at 1327. Plaintiffs cannot meet this standard because they have not, and are not imminently facing, a concrete injury. *See supra* Section I.A . Thus, "[a]s a matter of pure logic, postponing decision on this case until Plaintiff has suffered some concrete harm cannot itself constitute an independent harm to Plaintiff." *Morgan v. McCotter*, 365 F.3d 882, 891 (10th Cir. 2004).

Plaintiffs claim to face hardship because of their "uncertainty" about the challenged laws and the "potential civil liability" if they intentionally violate these laws. Compl. ¶¶ 152, 167. But "mere uncertainty as to the validity of a legal rule does not qualify as a hardship under this analysis," and "to hold otherwise would overwhelm the courts with requests for what essentially would be advisory opinions." *Rest. L. Ctr. v. City & Cnty. of Denver*, 2025 WL 2652871 at *6 (D. Colo. Sep. 16, 2025) (citation modified) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 811 (2003)). While Plaintiffs may desire an advisory opinion, their claims are not fit for judicial review and no hardships will ensue from withholding review.

## II.      Claims against the governor are barred by sovereign immunity.

This Court also lacks jurisdiction over Plaintiffs' claims against the Governor, because they are barred by sovereign immunity. The Eleventh Amendment "precludes unconsented suits in federal court against a state and arms of the state." *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009). Though *Ex parte Young*, 209 U.S. 123 (1908), provides a narrow exception to sovereign immunity, it does not apply here. For *Young* to apply, the state official sued must have both (1) "a particular duty to enforce the statute" at issue and (2) "a demonstrated willingness to exercise that duty." *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021) (citation modified). Importantly, the official must have more than "'a mere general duty to enforce the law.'" *Id.*

Neither element of the *Young* test is met here. As to the first, Plaintiffs have not identified any statute or other authority conferring on the Governor a particular duty to enforce the challenged laws. Compl. ¶ 11. The penalty provision in C.R.S. § 24-74-107 makes no mention of the Governor. Nor have Plaintiffs pointed to any other provision conferring such a duty. Instead, Plaintiffs rely solely on the Governor's role as "the chief executive responsible for executing Colorado law." Compl. ¶ 11. But that is precisely the kind of generalized duty that courts have repeatedly held inadequate to satisfy *Young*. *See, e.g.*, *Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 739 (10th Cir. 2024) ("*Ex parte Young* requires something 'more than a mere general duty to enforce the law.'"); *Hendrickson*, 992 F.3d at 967 (same); 13 Wright & Miller's Federal Practice and Procedure § 3524.3 (3d ed., Sep. 2025 update) (same).

13

Plaintiffs rely on a Colorado Supreme Court case for the proposition that the Governor is generally "the proper defendant in cases where a party seeks to enjoin or mandate enforcement of a statute." Compl. ¶ 11 (citing *Dev. Pathways v. Ritter*, 178 P.3d 524, 529 (Colo. 2008)). Indeed, Colorado's Supreme Court has permitted suit against the Governor in state court as the "'embodiment of the state'" for litigation purposes. *Dev. Pathways*, 178 P.3d at 530. But the Eleventh Amendment does not apply in state courts, so *Developmental Pathways* is irrelevant to the immunity analysis. *See Sanctuary Field Neighborhood Network v. Weiser*, No. 1:24-cv-01847-SKC-NRN, 2025 WL 2781285, at *4 (D. Colo. Sep. 30, 2025). Indeed, extending this rule to federal court would be directly contrary to the Eleventh Amendment, because it would be "impermissibly 'attempting to make the state a party.'" *Hendrickson*, 992 F.3d at 965.

As to the second *Young* element, Plaintiffs allege no facts showing that the Governor has a demonstrated willingness to enforce the challenged laws. Instead, all the Complaint's allegations regarding enforcement center on actions taken by the Attorney General. Compl. ¶¶ 143–48; *cf. Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013) ("[W]hen a state law explicitly empowers one set of officials to enforce its terms, a plaintiff cannot sue a different official absent some evidence that the defendant is connected to the enforcement of the challenged law."). This alone is fatal to Plaintiffs' claims, because both prongs of the *Young* test must be met for a plaintiff to avoid sovereign immunity.

Because *Young* is not satisfied, Governor Polis has immunity from suit.[7]

### III. The challenged laws are not void for vagueness under the U.S. Constitution (Count I).

Even if the Court had jurisdiction, the challenged laws are not void for vagueness. The void-for-vagueness doctrine serves to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). But this does not require that a challenged law offer "mathematical certainty." *Id*. at 110. A civil law is not impermissibly vague if it offers an "'imprecise but comprehensible normative standard'"; rather, it is unconstitutional only if "'no standard of conduct is specified at all.'" *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 n. 7 (1982).

Courts reviewing a statute for vagueness "'must indulge a presumption that it is constitutional, and the statute must be upheld unless the court is satisfied beyond all reasonable doubt that the legislature went beyond the confines of the Constitution.'" *United States v. Saffo*, 227 F.3d 1260, 1270 (10th Cir. 2000).

### A. Plaintiffs' cannot meet the demanding standard required to facially invalidate a civil statute for vagueness.

There is no dispute that the challenged laws are civil statutes. In analyzing vagueness claims, "'civil statutes . . . are subject to less rigorous constitutional standards than criminal statutes.'" *In re Stewart*, 175 F.3d 796, 811 (10th Cir. 1999); *see also Reynolds v. Quiros*, 25 F.4th 72, 96 (2d Cir. 2022) ("The void for vagueness

---

[7] The Governor joins in the remaining arguments in this motion in the alternative, in the event that this Court disagrees.

doctrine is chiefly applied to criminal legislation. Laws with civil consequences receive less exacting vagueness scrutiny." (citation modified)). For Plaintiffs to succeed, they must demonstrate that the challenged laws are "'so vague and indefinite as really to be no rule or standard at all.'" *Boutilier*, 387 U.S. at 123. And because Plaintiffs have brought a facial challenge against the statutes, they must show that "no set of circumstances exists under which the [statute] would be valid." *Wyo. Gun Owners v. Gray*, 83 F.4th 1224, 1234 (10th Cir. 2023). Plaintiffs cannot meet this heavy burden.

Plaintiffs demand a level of specificity in the statutes that is unsupported by any caselaw, alleging that the challenged laws are "unconstitutionally vague" because they fail to explicitly "define what it means to 'disclose' or 'make accessible' PII to federal agents." Compl. ¶ 28–29. A statute surely cannot be vague merely because it does not define each and every relevant word or phrase used, especially when, as here, those words are used in their commonly understood and usual meaning. *See Smith v. United States*, 508 U.S. 223, 228 (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning."); *see also Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570 (1982) (explaining that the court's role is to effect the will of the legislature, and "where its will has been expressed in reasonably plain terms, 'that language must ordinarily be regarded as conclusive'").

The word "disclose" ordinarily means "to make known or public."[8] And "accessible" means "capable of being used or seen: available."[9] These words are easily

---

[8] *Disclose*, Merriam-Webster.com Dictionary, https://tinyurl.com/3aa7jef8; *see also Disclose*, Black's Law Dictionary (12th ed. 2024) (same).
[9] *Accessible* Merriam-Webster.com Dictionary https://tinyurl.com/2du5uxcn.

construed according to their ordinary meaning and thus are not vague. *United States v. Panfil*, 338 F.3d 1299, 1302 (11th Cir. 2003); *see also United States v. Backas,* 901 F.2d 1528, 1530 (10th Cir. 1990) (finding "no vagueness" in terms "that have well-accepted, ordinary meanings"). Indeed, even where "there may be variations in the ordinary meaning [that] does not render the term[s] vague for constitutional purposes." *United States v. Graham*, 305 F.3d 1094, 1105 (10th Cir. 2002).

Indeed, accepting Plaintiffs' argument would threaten large swaths of federal and state laws. For example, the Privacy Act of 1974, 5 U.S.C. § 552a, has existed for over 50 years, serving as a critical protection of our private information. The Act prohibits disclosure of specified government records, including imposing criminal penalties on federal employees who willfully fail to comply. *Id.* § 552a(b), (i). Yet according to Plaintiffs' theory, the entire statute is facially unconstitutional because it too does not define "disclose" or "accessible" or many other terms. This argument is without merit.

Plaintiffs also allege that the challenged statutes are unconstitutionally vague because they do not address every possible contingency or scenario in which they may apply. For example, they argue that the statutes must be facially struck down because they do not specifically detail whether C.R.S. § 24-74-103's prohibition against sharing PII "is limited to disclosing PII for the *sole* purpose" of aiding federal immigration enforcement "or whether it is sufficient that such enforcement was *a* purpose for the disclosure of PII." Compl. ¶ 31; *see also id*. ¶ 38 (making the same allegation regarding C.R.S. § 24-74-104(1)); *id*. ¶¶ 34, 40 (making similar allegations regarding the challenged laws' exceptions for criminal investigations and political subdivision duties).

17

Similarly, they allege that the statutes are facially unconstitutional because they do not address whether vicarious liability can attach to supervisors. *Id*. ¶ 45.

These allegations amount to little more than a belief that the statutes could have been drafted better. But the Constitution does not "'impose impossible standards of specificity.'" *Wyo. Gun Owners*, 83 F.4th at 1233. Nor could it, as "in most English words and phrases there lurk uncertainties." *Id*. at 1233 (citation modified). Further, a statute need not spell out all situations where covered activity is prohibited; "that there may be some borderline questions to decide is not fatal to" a statute challenged for vagueness. *Fabrizius v. U.S. Dep't of Agric.*, 129 F.4th 1226, 1238 (10th Cir. 2025). Plaintiffs' allegations are not sufficient, especially because it is their burden on a facial challenge to show "no set of circumstances exists under which the [statute] would be valid." *Wyo. Gun Owners*, 83 F.4th at 1234.

Plaintiffs' other allegations fare no better. They suggest that the statutes are impermissibly vague because the Attorney General has "failed" to provide formal guidance or issue an Attorney General Opinion interpreting the challenged statutes. Compl. ¶ 141–42. But such guidance has never been necessary for a statute to survive a vagueness challenge, and Plaintiffs offer no authority to the contrary.

In sum, Plaintiffs cannot establish that the challenged laws are so vague that they supply no rule or standard, *Boutilier*, 387 U.S. at 123, much less that no set of circumstances exists in which the laws would be valid. Count I should be dismissed.

18

**B.    The challenged laws do not implicate Plaintiffs' First Amendment rights or heightened scrutiny.**

Despite Plaintiffs' suggestions, Compl. ¶ 50, the challenged laws do not implicate the First Amendment, and therefore, no heightened vagueness inquiry is implicated. *See Vill. of Hoffman Ests.*, 455 U.S. at 499. Plaintiffs' argument ignores the different standards that apply to government employees speaking in their official capacities. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Id*. at 421–22. For that reason, the Court has never suggested that a government cannot restrict employees from disclosing official information obtained through official duties, especially confidential information about private individuals. *See, e.g.*, *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462, 463 n.1, 468–69 (1951) (upholding a regulation prohibiting employees from disclosing all "'files, documents, records, and information'" except as authorized by the agency).

Because the challenged laws expressly apply only to Plaintiffs "while acting in [their] employment capacity," C.R.S. § 24-74-102(1.6), not as private citizens, the First Amendment does not apply.[10] Sharing PII that is not publicly available for the purpose of investigating, participating in, cooperating with, or assisting in federal immigration

---

[10] Plaintiffs allege that it is unclear if the statute "extends to the entirety of their life." Compl. ¶ 49. But this is simply not true, as § 24-74-102(1.6) plainly limits the scope to "while acting in the person's employment capacity."

enforcement involves only statements made "pursuant to their official duties." *Garcetti*,

547 U.S. at 421. Likewise, restricting information that "owes its existence" to Plaintiffs'

official duties, obtained through their work as public employees, does not implicate the

First Amendment. *Id.* at 421–22. Accepting Plaintiffs' assertions would implicate scores

of laws that protect confidential information collected by the government, such as

prohibiting sharing sensitive details from an ongoing criminal investigation or sharing

crime victims' personal information. There is no basis to claim such laws impinge on

public employees' free speech rights. The challenged laws do not implicate Plaintiffs'

First Amendment rights, and a heightened vagueness standard does not apply.

**C.    The challenged provisions' scienter requirement further supports
dismissal of Plaintiffs' vagueness challenge.**

Plaintiffs also take issue with the penalty provision, C.R.S. § 24-74-107(1), which

imposes a scienter requirement to establish liability against an employee. Compl.

¶¶ 41–44, 48. They argue this requirement that a political subdivision employee must

"intentionally violate[] a provision of this Article 74" is vague because it does not address

every other type of intent, such as negligent or knowing violations.[11] Compl. ¶ 41.

But Plaintiffs have it backwards. Well-established precedent holds that "when a

statute might otherwise be vague, a scienter requirement mitigates the vagueness and

makes the statute constitutional." *Ward v. Utah*, 398 F.3d 1239, 1251 (10th Cir. 2005);

*see also Vill. of Hoffman Ests.*, 455 U.S. at 499 (same). Including "culpable intent as a

---

[11] Many privacy laws make it unlawful to disclose information under certain conditions
and then, to ensure good-faith compliance, impose penalties for intentional violation.
*See, e.g.*, 5 U.S.C. § 552a(b), (i). The challenged laws mirror that approach.

necessary element of the offense does much to destroy any force in the argument that application of the [law] would be so unfair that it must be held invalid." *Boyce Motor Lines, Inc., v. United States*, 342 U.S. 337, 342 (1952). A "scienter requirement discourages 'unscrupulous enforcement' and clarifies" the challenged statutes. *Panfil*, 338 F.3d at 1301. Plaintiffs' claim should thus be rejected.

## IV.    The challenged laws are not void for vagueness under the Colorado Constitution because the standard is materially identical (Count IV).

Plaintiffs also bring a claim under the Colorado Constitution's Due Process Clause, Article II, § 25, alleging that the challenged laws "fail to provide the requisite notice or standards." Compl. ¶ 173. They do not offer additional arguments and merely reassert the same claims brought under the U.S. Constitution. *Id.* The claim should be dismissed for identical reasons, as the vagueness analysis under the Colorado Constitution is the same as under the U.S. Constitution.[12]

Just as under federal law, "a statute is presumed to be constitutional in the first instance," and a party challenging a statute as vague has the burden to "establish its unconstitutionality beyond a reasonable doubt." *People v. Riley*, 708 P.2d 1359, 1362 (Colo. 1985). While statutes must be capable of providing fair warning of proscribed conduct, "mathematical precision in legislative draftsmanship is not necessary" given that they "must be sufficiently general to be capable of application under varied circumstances." *People v. Gross*, 830 P.2d 933, 937 (Colo. 1992); *see also Watso v. Colo. Dep't of Soc. Servs.*, 841 P.2d 299, 309 (Colo.1992). "No vagueness problem

---

[12] To the extent Plaintiffs claim the standard differs, the Court should decline to exercise supplemental jurisdiction upon dismissal of the federal claims. 28 U.S.C. § 1367(c)(3).

exists if a party strains to inject doubt as to the meaning of words where no doubt would be felt by the normal reader." *Bd. of Educ. v. Wilder*, 960 P.2d 695, 704 (Colo. 1998). "[W]ords and phrases used in statutes are to be considered in their generally accepted meaning, and the court has a duty to construe the statute in such a way that it is not void for vagueness when a reasonable and practicable construction can be given to its language." *People v. Rosburg*, 805 P.2d 432, 439 (Colo. 1991). Further, "the strong presumptive validity of a legislative act militates against invalidating a statute as vague merely 'because difficulty is found in determining whether certain marginal offenses fall within [its] language.'" *Id.* "Less specificity is required when a statute or ordinance . . . imposes civil penalties, or contains a scienter requirement.*" Robertson v. City & Cnty. of Denver*, 978 P.2d 156, 159 (Colo. App. 1999); *see also Parrish v. Lamm*, 758 P.2d 1356, 1366 (Colo. 1988) (same). And a party seeking to facially invalidate a statute as vague "must show that [the statute] is incomprehensible in all of its applications." *People v. Shell*, 148 P.3d 162, 172 (Colo. 2006).

Because the analysis is materially the same under Article II, § 25 of the Colorado Constitution, the Court should dismiss Count IV based on the same reasoning. Plaintiffs cannot meet their burden under the demanding applicable standards. Both due process claims (Counts I and IV) should be dismissed for identical reasons.

## V.    Federal law does not preempt the challenged laws (Count II).

In Count II, Plaintiffs offer two conclusory sentences that the three challenged provisions are preempted under the Supremacy Clause "'as an obstacle'" to the "'full purposes and objective of Congress'" and "directly conflict with" 8 U.S.C. §§ 1373(a),

22

1644. Compl. ¶¶ 161–62.  Elsewhere, Plaintiffs "concur" with the United States' arguments in *United States v. Colorado*, No. 1:25-cv-01391-GPG-KAS (D. Colo.). Compl. ¶¶ 56–57. Defendants understand this to mean that Plaintiffs adopt the United States' express and obstacle preemption claims with respect to these provisions.

The challenged laws are neither expressly nor impliedly preempted by federal immigration law. Express preemption occurs when Congress "withdraw[s] specified powers from the States by enacting a statute containing an express preemption provision." *Arizona v. United States*, 567 U.S. 387, 399 (2012). Conflict preemption, a form of implied preemption, occurs where "compliance with both federal and state regulations is a physical impossibility" or "where the challenged state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* All forms of preemption "work in the same way: Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence." *Murphy v. NCAA*, 584 U.S. 453, 477 (2018). The Supremacy Clause supplies "a rule of decision," but it is "not an independent grant of legislative power to Congress." *Id.* As such, for a federal statute to preempt state law, it "must be best read as one that regulates private actors," because Congress has "'the power to regulate individuals, not States.'" *Id.*

"Statutes are entitled to the presumption of non-preemption." *NLRB v. Pueblo of San Juan*, 276 F.3d 1186, 1195 (10th Cir. 2002). "The party claiming preemption bears the burden of showing with specificity that Congress intended to preempt state law."

23

*Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 489 n.4 (10th Cir. 1998). That party likewise "bear[s] the burden of showing that federal and state law conflict." *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1143 (10th Cir. 2010). "In preemption analysis, courts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'" *Arizona*, 567 U.S. at 400.

Plaintiffs' preemption claim fails for three reasons. First, there is no conflict between federal and state law, a prerequisite for any preemption claim. Second, Plaintiffs have not identified any valid preemption provisions because all the relied-upon federal laws regulate only state actors, not private actors. Third, accepting Plaintiff's arguments would run afoul of the Tenth Amendment anticommandeering principle.

## A.    There is no conflict between federal and state law.

The preemption claim fails initially because Plaintiffs cannot meet their "burden of showing that federal and state law conflict." *Cook*, 618 F.3d at 1143. The purported conflict is premised on an anti-textual reading of 8 U.S.C. §§ 1373 and 1644 that has been rejected by every court and a similarly flawed reading of Colorado law. Once these errors are removed, there is no conflict, and the preemption claim fails.

### 1.    The challenged laws mandate compliance with federal law and do not conflict with federal law.

Most importantly, the challenged laws contain express carve-outs for compliance with federal law, allowing information to be collected or disclosed "as required by federal or state law." C.R.S. §§ 24-74-103(1); 24-74-104(1), (2). By definition, this ensures no Supremacy Clause issue. After all, the Supremacy Clause is merely a "'rule of

24

decision,'" specifying that "federal law is supreme in case of a conflict with state law." *Murphy*, 584 U.S. at 477. Here, in the case of a conflict, state law allows collection or disclosure as required by federal law. Plaintiffs have not pointed to any case where a law with a similar carve-out was preempted. Moreover, Sections 1373 and 1644 contain no provision regarding information collection, so there can be no conflict with the limitations on collection of information found in C.R.S. § 24-74-104.

In sum, because the challenged state laws contain express carve-outs for compliance with federal law, there is no conflict and no express preemption.

### 2. The preemption claim is premised on an anti-textual reading of §§ 1373 and 1644 that has been rejected by every court.

Plaintiffs' preemption claim is based on adopting the United States' arguments from *United States v. Colorado*, No. 1:25-cv-01391-GPG-KAS (D. Colo.), which are based on an erroneous reading of sections 1373 and 1644 that has been rejected by every court. *United States v. Illinois*, No. 25-cv-01285, 2025 WL 2098688, at *10 (N.D. Ill. July 25, 2025) ("Without exception, each [other court that has considered the issue] has rejected the United States's capacious reading of § 1373.") (collecting cases). Sections 1373 and 1644 provide that states and local governments may not "prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [federal immigration officials] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a); *see also id.* § 1644. By contrast, the challenged Colorado law restricting information disclosure applies to "personal identifying information," which is defined broadly to cover data ranging from a person's license plate number to "physical characteristic[s]" to "medical information."

25

C.R.S. § 24-74-102(1). Because the federal and state laws apply to different categories of information, there is no preemption.[13]

Rejecting this clear limitation, Plaintiffs and the United States argue that the federal provisions cover all sorts of other information beyond citizenship or immigration status, like a person's activities and whereabouts. Not so. As courts have uniformly held, the plain meaning of "the phrase 'information regarding the citizenship or immigration status, lawful or unlawful, of any individual' is naturally understood as a reference to a person's legal classification under federal law," not to broad swaths of other information like addresses, court and meeting dates, release dates, or contact information, as Plaintiffs claim. *United States v. California*, 921 F.3d 865, 891 (9th Cir. 2019); *see also Illinois*, 2025 WL 2098688, at *10. Congress chose to focus the statute specifically on "citizenship or immigration status," emphasizing this point by adding a further clause "lawful or unlawful." 8 U.S.C. §§ 1373(a), 1644. Surely, if Congress intended to cover all sorts of other information, it would have said so in a more direct manner. *See, e.g.*, *Landgraf v. USI Film Prods.*, 511 U.S. 244, 262 (1994) (refusing "to assume that Congress chose a surprisingly indirect route to convey an important and easily expressed message"). This is especially so because Congress chose "more expansive phrases in other provisions of Title 8 when intending to reach broader swaths of information." *California*, 921 F.3d at 892.

---

[13] While one kind of information covered by the state law is "immigration or citizenship status," the law's carve-out for compliance with federal law avoids any conflict as to that category of information. C.R.S. § 24-74-102.

26

In sum, the Court should follow every other court and reject the anti-textual, overbroad reading of sections 1373 and 1644. Once this erroneous interpretation is rejected, there is no conflict between federal and state law.

### 3. Plaintiffs cannot rely on obstacle preemption to create a conflict that does not exist.

Lacking any expressly conflicting statute, Plaintiffs allege the challenged laws are preempted as an "obstacle" to achieving Congress's immigration objectives. Compl. ¶ 161. But the Supreme Court has repeatedly emphasized that preemption is not a "freewheeling judicial inquiry into whether a state statute is in tension with federal objectives." *Chamber of Com. v. Whiting*, 563 U.S. 582, 607 (2011). "[S]uch an endeavor 'would undercut the principle that it is Congress rather than the courts that pre-empts state law.'" *Id.* As a result, "'a high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act.'" *Id.* At bottom, the Plaintiffs' adopted arguments do exactly what the Supreme Court has forbidden: they seek to rewrite the laws Congress enacted to create a conflict that does not exist.

Plaintiffs' conflict preemption claim is difficult to parse. They allege that § 24-74-103, § 24-74-104, and § 24-74-107 all "stand[] as an obstacle to the accomplishment and execution of the full purposes and objective of Congress." Compl. ¶ 161. But beyond this single conclusory sentence, Plaintiffs offer nothing. Having failed to demonstrate any express preemption, Plaintiffs cannot rely on some unidentified vague notions of purpose to change the scope of these federal statutes. Because Plaintiffs have not identified any conflict with federal law, the preemption claim fails.

27

**B.    Plaintiffs do not rely on any valid preemption provisions.**

The preemption claim adopted by Plaintiffs fails for an independent reason: the only two federal statutes Plaintiffs rely upon, 8 U.S.C. §§ 1373 and 1644, cannot validly preempt Colorado's laws because they do not regulate private parties. Congress has "'the power to regulate individuals, not States.'" *Murphy*, 584 U.S. at 477. As a result, for a federal statute to preempt state law, it "must be best read as one that regulates private actors." *Id.* Sections 1373 and 1644 fail that test, as they both "unequivocally dictate[] what a state legislature may and may not do." *Id.* at 474. They purport to directly regulate the kinds of laws states may enact. *See* 8 U.S.C. § 1373(a) ("[A] Federal, State, or local government entity or official may not prohibit, or in any way restrict."). And the subject of both laws' regulation is unquestionably state and local governments. *See id.* § 1373(b) (barring restrictions on state or local government entities); *id.* § 1644 (same); *see also Illinois*, 2025 WL 2098688, at *16 ("Section 1373 regulates States and only States (and their political subdivisions), so it cannot be preemptive."). As a result—and again, as courts have repeatedly found—neither provision can validly preempt state law. *See Ocean Cnty. Bd. of Comm'rs v. Attorney General*, 8 F.4th 176, 181–82 (3d Cir. 2021); *Illinois*, 2025 WL 2098688, at *16; *City of Philadelphia v. Sessions*, 309 F. Supp. 3d 289, 329 (E.D. Penn. 2018); *City & Cnty. of San Francisco v. Sessions*, 349 F. Supp. 3d 924, 950 (N.D. Cal. 2018).

**C.    Accepting Plaintiffs' position would violate the Tenth Amendment.**

Finally, Plaintiffs' adopted preemption claim should be rejected because it would amount to unconstitutional commandeering. Under the anticommandeering doctrine,

28

"the Federal Government may not command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." *Murphy*, 584 U.S. at 473 (citation modified). This rule, grounded in the Tenth Amendment, "applies regardless of whether the federal statute commands state action or precludes it." *Colorado v. U.S. Dep't of Justice*, 455 F. Supp. 3d 1034, 1058 (D. Colo. 2020). The doctrine preserves the balance of power between the federal government and the states; promotes political accountability by clarifying whether state or federal actors are responsible for regulatory programs; and prevents the federal government from shifting the costs of regulation to the States. *Murphy*, 584 U.S. at 473–74.

Plaintiffs' argument would remove from Colorado the choice of whether to expend state and local employees' resources on assisting with federal immigration enforcement. As many courts have recognized, the anticommandeering doctrine forbids that result.[14] Permitting federal law to dictate how states maintain their data and how state and local employees spend their time would "undermine political accountability by blurring the line between state and federal policy initiatives and priorities." *Colorado*, 455 F. Supp. 3d at 1059. "And, of particular concern to Colorado," it would "shift the cost

---

[14] *See, e.g.*, *Illinois*, 2025 WL 2098688, at \*23–25; *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 866–73 (N.D. Ill. 2018), *aff'd on other grounds*, 961 F.3d 882, 898 (7th Cir. 2020); *County of Ocean v. Grewal*, 475 F. Supp. 3d 355, 376–79 (D. N.J. 2020), *aff'd on other grounds*, 8 F.4th 176, 182 n.4 (3d Cir. 2021); *Oregon v. Trump*, 406 F. Supp. 3d 940, 971–73 (D. Or. 2019), *aff'd in part and vacated as moot in part sub nom.*, *City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078, 1087–88 (9th Cir. 2022); *City & Cnty. of San Francisco v. Sessions*, 349 F. Supp. 3d at 949–53, *aff'd in part, vacated in part on other grounds*, 965 F.3d 753, 761 (9th Cir. 2020); *Philadelphia*, 309 F. Supp. 3d at 325–31; *see Colorado*, 455 F. Supp. 3d at 1057–60 (questioning constitutionality of § 1373); *United States v. California*, 314 F. Supp. 3d 1077, 1101 (E.D. Cal. 2018), *aff'd in part, rev'd in part on other grounds*, 921 F.3d 865, 893 n.19 (9th Cir. 2019).

of compliance to state and local governments with limited resources, requiring them 'to stand aside and allow the federal government to conscript the time and cooperation of local employees.'" *Id.* The Tenth Amendment leaves to Colorado the decision of how state law enforcement spend their time, as well as what data to collect from Coloradans. *See City & Cnty. of San Francisco*, 349 F. Supp. 3d at 951–52; *see also City of El Cenizo v. Texas*, 890 F.3d 164, 180–81 (5th Cir. 2018). Because Plaintiffs' preemption argument would require otherwise, it must be rejected.

## VI.    There is no separate cause of action under the Declaratory Judgment Act (Count III).

While pleaded as a separate claim, it is well settled that "the Declaratory Judgment Act does not provide an independent federal cause of action." *Nero v. Oklahoma*, 2022 WL 14423872, at *2 (10th Cir. Oct. 25, 2022) (citing *Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671–74 (1950) (describing "limited procedural purpose of the Declaratory Judgment Act")). The Act "merely empowers a court '[i]n a case of actual controversy within its jurisdiction' to 'declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *Id.* (quoting 28 U.S.C. § 2201(a)). "In other words, the Act 'enlarge[s] the range of remedies available in the federal courts,' *Skelly Oil Co.*, 339 U.S. at 671, but it leaves 'substantive rights unchanged.'" *Nero*, 2022 WL 14423872, at *2 (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959)). Because the substantive claims lack merit, that resolves the requested declaratory remedy.

### CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint.

30

Dated: October 30, 2025

Respectfully submitted,

**PHILIP J. WEISER**
Attorney General of Colorado

By: /s/ Sam Wolter
Sam Wolter
*Assistant Attorney General*
David Moskowitz
*Deputy Solicitor General*
Talia Kraemer
*Assistant Solicitor General*
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6000
David.Moskowitz@coag.gov
Talia.Kraemer@coag.gov
Samuel.Wolter@coag.gov

*Counsel for the State of Colorado, Jared Polis, and Philip Weiser*

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 30, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


/s/Sam Wolter
*Assistant Attorney General*