**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-02460-GPG-STV

TODD ROWELL, in his individual capacity,
MATTHEW KING, in his individual capacity, and
CURTIS BRAMMER, in his individual capacity,

      Plaintiffs,

v.

PHILIP J. WEISER, in his official capacity as
the Attorney General for the State of Colorado, and
JARED POLIS, in his official capacity as the
Governor for the State of Colorado,

      Defendants.

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS (ECF No. 18)**

---

## <u>INTRODUCTION</u>

Earlier this year, Colorado expanded restrictions on collecting and disseminating personal identifying information ("PII") by political subdivision employees. *See* C.R.S. § 24-74-101 *et seq.* ("Article 74"). Plaintiffs Sheriff Todd Rowell, Undersheriff Matthew King and Captain Curtis Brammer (collectively, "Plaintiffs") are elected officials and employees of the Mesa County Sheriff's Office ("MCSO") who regularly collect, maintain, and transmit PII during their day-to-day law enforcement activities. As drafted, the new law is both indefinite and vague, making it impossible for Plaintiffs to do their jobs. This flaw is especially important because Article 74

1

punishes those who "intentionally"[1] violate its provisions with a fine of up to $50,000.

For the reasons detailed below, the Court should deny Defendants' Motion to Dismiss, ECF No. 18 ("Motion"), and allow the suit to proceed on its merits.[2] At this point, all Plaintiffs need show is that, on the face of the Complaint, they are entitled to be in Court. Plaintiffs meet that burden.

## BACKGROUND

As part of their law enforcement duties wholly unrelated to federal immigration enforcement, Plaintiffs regularly obtain and transmit information that is used to identify an individual for purposes of legitimate state and local law enforcement functions. *See* Complaint ¶¶ 64–130. Plaintiffs, as MCSO senior commanders, must personally make decisions and issue directives as to what information to collect, when and where to share it, and what law enforcement activities the MCSO should even conduct. *Id.* ¶¶ 65, 76, 88, 96. As a result, they personally face the risk of an enforcement action while conducting their job.[3] This threat is both valid and

---

[1] As detailed herein, the use of the word "intentionally" in Article 74 is vague in and of itself because it is unclear whether it applies to someone who intentionally provides information or someone who provides information with the intent of assisting in immigration enforcement. This is an important distinction given the context identified here and in the Complaint, namely, state and local law enforcement engage in task force activities with Federal agencies, some of which also enforce immigration law. *See* Complaint ¶¶ 64–105. Thus, it is crucial that the statute be clarified as to whether a person must intend to aid in immigration enforcement to violate Article 74 or whether merely intentionally providing information is sufficient.

[2] Defendants Attorney General Philip Weiser and Governor Jared Polis are referred to collectively herein as "Defendants."

[3] Defendants note that Mesa County was party to a case in state court challenging Article 74 which was dismissed after the court determined the plaintiff counties lacked standing to bring suit.

immediate.

Enforcement of Article 74 is neither speculative nor conjectural. For example, Defendants have already filed an enforcement action against a MCSO Deputy.[4] *See id.* ¶¶ 143 n.5; *see also State of Colorado ex rel. Philip J. Weiser v. Zwinck*, No. 2025CV30303 (Mesa Cnty. Dist. Ct.). The Attorney General alleged that the deputy, Deputy Zwinck, violated Article 74 while working on a multi-jurisdictional drug enforcement task force, when he provided information to the task force which included federal agents, who in turn passed the information on to their colleagues in federal immigration enforcement. By way of background, it is impossible to conduct drug task force activities without sharing information with federal agents as the federal government, not the MCSO or other state and local agencies, maintains the national databases used in drug enforcement. Complaint ¶¶ 70–73.

Accordingly, as employees within Article 74's scope facing a similar threat of litigation and enforcement, and with no other mechanism available to them to avoid prosecution, Plaintiffs bring this lawsuit to obtain clarity and finality as to what conduct is or is not prohibited under the statutes, and whether they even pass constitutional muster.

---

*Douglas Cnty. v. Colorado*, No. 2024CV31125 (Denver Dist. Ct.). Whether or not Mesa County was found to lack standing for its challenge is immaterial to the merits of Plaintiffs' claims because Article 74 threatens Plaintiffs with liability in their individual capacities. Moreover, Defendants have not argued issue or claim preclusion, nor could they because Plaintiffs are separate and apart from Mesa County. Plaintiffs opted to bring this suit once the Attorney General brought the enforcement action against the MCSO deputy and then pursued a "pattern and practice" investigation into the Sheriff's Office.

[4] That action was dismissed for reasons yet unknown after the deputy left the MCSO.

<strong><u>ARGUMENT AND AUTHORITIES</u></strong>

**I.    Plaintiffs Allege Sufficient Facts to Establish Justiciable Claims.**

Defendants argue that Plaintiffs lack standing and that their claims are not ripe.  For the reasons below, Plaintiffs have standing to bring a pre-enforcement challenge to Article 74.  Their claims are properly before the Court and withholding review will only prolong and increase the risks Plaintiffs face.

**A.    Plaintiffs have Standing.**

Article III of the Constitution limits federal court jurisdiction to cases and controversies. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014).  Generally, to have standing, a plaintiff must show injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  In their Motion, Defendants do not argue lack of causation (with one exception[5]) or redressability, therefore, the only issue currently before the Court is whether Plaintiffs have suffered a justiciable injury.  *Kipling v. State Farm Mut. Auto. Ins. Co.*, 159 F. Supp. 3d 1254, 1268 (D. Colo. 2016) (arguments not raised in motion are deemed waived).[6]

---

[5] Defendants argue Plaintiff Brammer's discipline, *see* Complaint ¶ 145, cannot be tied to their actions, however, they ignore the inescapable fact that he was disciplined due to a subordinate's alleged violation of the statute and the statute's vagueness prevented him from effectively supervising the subordinate.

[6] Although the Court has an independent duty to assure itself of jurisdiction, causation and redressability are satisfied given that Defendants possess the authority to enforce Article 74 against Plaintiffs and injunctive and declaratory relief limiting their ability to do so would mitigate Plaintiffs' injuries.  *See Aptive Envt'l, LLC v. Town of Castle Rock*, 959 F.3d 961, 978 (10th Cir. 2020) (explaining that enjoining a government entity from enforcing an unconstitutional ordinance redresses injuries caused by the ordinance).

Pre-enforcement challenges are nothing new. Courts often permit a plaintiff to challenge a statute prior to suffering actual harm from its enforcement. *Baca v. Colorado Dep't of State*, 935 F.3d 887, 910 (10th Cir. 2019) ("Although an injury must usually be imminent, a plaintiff need not wait for the harm to occur before seeking redress.") (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)), *overruled in part on other grounds Chiafalo v. Washington*, 591 U.S. 578 (2020). "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List*, 573 U.S. at 158 (quotation omitted). To have standing for a pre-enforcement challenge, a plaintiff must demonstrate "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.* at 159 (quotation omitted). For purposes of assessing standing, a court must "assume . . . that the plaintiff will prevail on his merits argument—that is, that the defendant has violated the law." *Day v. Bond*, 500 F.3d 1127, 1137 (10th Cir. 2007) (citing *Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006) (en banc)).

### 1.    *Plaintiffs' Actions Implicate a Constitutional Interest.*

Article 74 applies to "political subdivision employees" and there can be no legitimate dispute that this encompasses all three Plaintiffs. C.R.S. § 24-74-102(1.6); Motion at 3 (conceding that Plaintiffs "are three political subdivision employees."). Thus, Plaintiffs' actions implicate constitutional interests because Article 74 threatens them with punitive action arising from their otherwise constitutionally permissible employment activities.

Courts have long recognized that a potential fine or penalty implicates constitutional concern. *Isaacson v. Mayes*, 84 F.4th 1089, 1099 (9th Cir. 2023) (holding plaintiffs sufficiently

alleged imminent future injury to property interest because a violation of the challenged statute could result in monetary damages).  Further, even if their conduct does not affect a constitutional interest, Plaintiffs may nevertheless bring a facial challenge for vagueness and a violation of due process.  *Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 497 (1982) ("A law that does not reach constitutionally protected conduct . . . may nevertheless be challenged on its face as unduly vague, in violation of due process.").

### 2.    *Article 74 Proscribes Plaintiffs' Otherwise Permissible Conduct.*

Defendants argue, without legal or factual support, that either Plaintiffs must admit to violating Article 74—or, conversely, that Plaintiffs have not admitted to violating the law and, therefore, they have no claims (or standing to bring this action).  Motion at 8, 11–12.  But it is well-settled that a plaintiff need <u>not</u> allege that they violated a statute before challenging the statute. *See, e.g.*, *Scott v. Allen*, 153 F.4th 1088, 1095 (10th Cir. 2025) ("In fact, '[n]othing in [the Supreme] Court's decisions requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law.'") (quoting *Susan B. Anthony List*, 573 U.S. at 163); *id.* at 1096 ("[Plaintiff] maintains his conduct would be lawful, but that does not mean he concedes that he lacks standing, nor that a prosecutor would see his conduct differently. Our cases require us to determine whether his conduct is arguably proscribed by the statute, exposing him to the risk of criminal liability should he speak.").

In a similar vein, the fact Plaintiffs may have stopped certain behavior does not preclude standing.  *Isaacson*, 84 F.4th at 1099–1100 ("[Plaintiffs'] choice to eliminate the threat of enforcement by not doing what they want or need to do should not bar their suit.") (citations omitted); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007) ("Given [the] genuine

6

threat of enforcement, we did not require, as a prerequisite to testing the validity of the law in a suit for injunction, that the plaintiff bet the farm, so to speak, by taking the violative action."); *Baca*, 935 F.3d at 910 (standing is not precluded "because the threat-eliminating behavior was effectively coerced") (quotation omitted).

Simply stated, Plaintiffs contend that performance of their duties could subject them to prosecution similar to the enforcement actions Defendants have already taken. *See* Complaint ¶¶ 58–130. The Court must accept these allegations as true when determining whether Plaintiffs have standing. *See Day*, 500 F.3d at 1137.

### 3. *Defendants' Conduct Establishes a Credible Threat of Future Enforcement.*

Defendants contend Plaintiffs' fears of prosecution are unfounded and too speculative to sustain standing. Motion at 8–9, 11. But Defendants' conduct provides the necessary evidence to show a credible threat of enforcement. The Tenth Circuit utilizes a three-factor test to determine whether a credible fear of prosecution exists: (1) whether there was past enforcement against the same conduct; (2) whether authority to initiate charges is exclusive to a prosecutor or an agency; and (3) whether the state disavows future enforcement. *Peck v. McCann*, 43 F.4th 1116, 1132 (10th Cir. 2022) (citation omitted). A plaintiff need not establish that all three factors weigh in his favor; instead, courts balance the factors. *See id.* (finding credible threat of enforcement even though second factor weighed against plaintiff).

*Past enforcement.* As a threshold matter, Article 74's existence and its punitive elements imply the threat of enforcement. *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 902 (10th Cir. 2012) ("[T]he existence of a statute implies the threat of its enforcement, and the

[plaintiff] was entitled to bring a pre-enforcement challenge based on the probability of future injury.") (citations omitted). More importantly, Defendants have already demonstrated an intent to enforce Article 74. As discussed above, the enforcement action against Deputy Zwinck, and an associated "pattern and practice" investigation into the MCSO, *see* Complaint ¶ 147, establish Defendants' willingness to enforce the statute. Tellingly, the Attorney General stated in a press release the "main goal [of the enforcement action against Deputy Zwinck] is for law enforcement officers to know the state of Colorado is serious about enforcing the laws in question." *Id.* ¶ 146 n.5. Taking these allegations as true, as the Court must, this is sufficient to establish that Defendants' past enforcement implies future prosecution.

*Authority to enforce.* Article 74 does not expressly limit who may enforce its terms, and it has not been judicially determined whether a private citizen can bring suit to enforce § 24-74-107(1)'s penalties. More importantly, the State has already sued to enforce Article 74 demonstrating that the risk of enforcement is ever-present. Regardless, this factor is not dispositive where the other two factors are met as they are here. *See Peck*, 43 F.4th at 1132 (holding there was a credible threat of enforcement despite the fact the challenged statute could only be enforced by prosecutors).

*Disavowal of future enforcement.* Standing is strongest where, as here, a prosecutor refuses to disclaim future enforcement or admit that a party's conduct does not violate a statute. *See Scott*, 153 F.4th at 1097 n.2 (collecting cases). At no point have Defendants disavowed an intent to enforce Article 74. In fact, the Attorney General has said "[o]ne of our goals in enforcing [Article 74] is to make clear that this law is not optional. This is a requirement and it's one that we take seriously." Complaint ¶ 146 n.5. Plaintiffs attempted to conserve resources (including the

8

Court's) and avoid the need for litigation by requesting the Attorney General provide guidance regarding Article 74's scope. The Attorney General refused. This only underscores Plaintiffs' concerns. *Peck*, 43 F.4th at 1133 ("While an assurance of non-enforcement is not necessary to defeat standing, a refusal to provide such an assurance undercuts Defendants' argument that Ms. Peck's perception of a threat of prosecution is not objectively justifiable.") (quotation omitted).[7]

Balancing all three factors, Plaintiffs have demonstrated a credible threat of enforcement and thus standing for their challenges to Article 74.

### B.    Plaintiffs' Claims Are Ripe.

The concept of ripeness has both constitutional and prudential dimensions. *See United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019) (explaining the distinction between constitutional ripeness and prudential ripeness). "In pre-enforcement challenges, . . . standing and ripeness often 'boil down to the same question.'" *Teva Pharms. USA. Inc. v. Weiser*, 709 F. Supp. 3d 1366, 1375 (D. Colo. 2023) (quoting *Susan B. Anthony List*, 573 U.S. at 157 n.5; *see also id.* ("Standing and ripeness are closely related in that each focuses on whether the harm asserted has matured sufficiently to warrant judicial intervention.") (citing *Peck*, 43 F.4th at 1133). Thus, Plaintiffs' standing arguments equally demonstrate that their claims satisfy Article III's ripeness

---

[7] Recognizing, as they must, that they have never disavowed enforcement, Defendants appear to contend, based solely on their positions taken in this Motion, that they have somehow "constructively" disavowed future enforcement by the positions taken in their response. However, nothing in the Motion is binding on Defendants and, accordingly, it does not satisfy the requirement that the State concede it will not enforce Article 74 against the Plaintiffs. To the contrary, Defendants' prior conduct, their refusal to take a formal position, their investigation into patterns and practices and their generalized representations that Article 74 speak for themselves and make clear Defendants' intent to pursue future enforcement.

requirement.

Prudential ripeness is not tethered to the Constitution's "case or controversy" requirement but is a separate matter under which a court *may* decline to hear a case. *See United States v. Bennett*, 823 F.3d 1316, 1325 (10th Cir. 2016) ("[W]hile an appeal . . . may satisfy the Article III component, that appeal may nonetheless be dismissed on prudential ripeness grounds.") (citation and footnote omitted). When weighing whether to exercise its discretion and refuse to hear a case, a court is to consider "the fitness of the issues for judicial decision[,]" and "the hardship to the parties of withholding court consideration." *Utah Republican Party v. Cox*, 885 F.3d 1219, 1243 (10th Cir. 2018) (quotation omitted).

The first prong incorporates consideration of "whether determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed." *Kansas Jud. Rev. v. Stout*, 519 F.3d 1107, 1118 (10th Cir. 2008) (quotation omitted). Based on these factors, it is clear the issues in this case are ripe for determination as they ultimately pose quintessential legal issues—statutory and constitutional interpretation. *Peck*, 43 F.4th at 1134 (facial constitutional challenge is a purely legal question and thus an ideal fit for judicial review, favoring a conclusion that the case is ripe.); *see also New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1504 (10th Cir. 1995) ("[A] first amendment challenge to the facial validity of a statute is a strictly legal question; it does not involve the application of the statute in a specific factual setting.") (quotation omitted).

Defendants do not delineate what factual development they deem necessary before Plaintiffs can bring their claims other than insisting upon Plaintiffs actually violating the law and suffering prosecution. As discussed above, these requirements are contrary to established law and

10

would, if correct, abrogate pre-enforcement constitutional challenges entirely.  *Cf. New Mexicans for Bill Richardson*, 64 F.3d at 1503 ("It is generally accepted that the arguable vagueness of a statute greatly militates in favor of finding an otherwise premature controversy to be ripe.").  No court has ever gone so far.

The second prong is also met. Plaintiffs have suffered, and will continue to suffer, undue hardship if they are denied review of Article 74 and Defendants' enforcement thereof.  *Peck*, 43 F.4th at 1134 ("In assessing hardship, we typically "focus on whether the challenged action creates a direct and immediate dilemma for the parties.") (quotation omitted); *Basic Rsch., LLC v. FTC*, 807 F. Supp. 2d 1078, 1092 (D. Utah 2011) ("A plaintiff will not suffer hardship from the court withholding review if there are no immediate "sanctions for noncompliance, or if the potential sanction is de minimis;" on the other hand, if the agency action "puts the complaining party on the 'horns of a dilemma,'" the court should undertake review.") (citation omitted).

In this case, Article 74's substantial penalties and the credible threat of prosecution described above impose hardship on Plaintiffs and place them in an impermissible dilemma.  *See Peck*, 43 F.4th at 1134 ("For the reasons described in our standing analysis, we find a credible threat of prosecution here, which imposes a hardship on Ms. Peck . . . ."); *Gerhardt v. Mares*, 179 F. Supp. 3d 1006, 1055 (D.N.M. 2016) ("Harm includes the heightened uncertainty and resulting behavior modification that may result from delayed resolution, as well as traditional types of harm recognized by the courts.") (quotation omitted).  Thus, the matter is ripe and the Motion should be denied on that basis.

**II.     Governor Polis Does Not Enjoy Sovereign Immunity from Suit Under the Facts Alleged Here.**

There is a split of authority in this District regarding whether Colorado law is instructive as to when a Governor may be named as a defendant.[8] *See Wildgrass Oil & Gas Comm. v. Colorado*, 447 F. Supp. 3d 1051, 1062 (D. Colo. 2020) ("Until the Colorado Supreme Court indicates more explicitly its intention to invalidate its longstanding practice [of naming Governor as defendant], I will not do so. Therefore, I find Governor Polis in his official capacity is an appropriate defendant in this case."), *aff'd* 843 F. App'x 120 (10th Cir. 2021).  Regardless, Governor Polis fits squarely within Tenth Circuit precedent approving a governor as a defendant.

Article 74 is silent as to who has express authority to enforce its provisions. The Tenth Circuit's decision in *Hendrickson v. AFSCME Council 18* is instructive.  992 F.3d 950 (10th Cir. 2021).  There the court found that the Governor and Attorney General were not proper defendants for purposes of *Ex parte Young* because the challenged statute *expressly* vested enforcement authority with a separate governmental board.  *Id.* at 965–66.  That is not the case here; instead, the Colorado statute appears to grant wide enforcement powers given its silence on the issue.  The Tenth Circuit discussed its earlier decision in *Petrella v. Brownback*, 697 F.3d 1285 (10th Cir. 2012), where the court found the Governor of Kansas was a proper defendant to a suit challenging

---

[8] *Compare Wildgrass Oil & Gas Comm.*, 447 F. Supp. 3d at 1061–62 (D. Colo. 2020); *Eaves v. Polis*, No. 21-cv-01269-KLM, 2023 WL 3191452, 2023 U.S. Dist. LEXIS 77357, at *12 (D. Colo. Mar. 29, 2023); *Harris v. Polis*, No. 20-cv-02999-CMA-STV, 2021 WL 3024664, 2021 U.S. Dist. LEXIS 133829, at *6 (D. Colo. June 23, 2021), *R. & R. adopted* 2021 WL 3021466, 2021 U.S. Dist. LEXIS 132618 (July 16, 2021), with *Sanctuary Field Neighborhood Network v. Weiser*, No. 24-cv-01847-SKC-NRN, 2025 WL 2781285, 2025 U.S. Dist. LEXIS 193494, at *9–10 (D. Colo. Sept. 30, 2025).

a school-funding law due to the Governor's general enforcement authority and the fact that "there was no indication the statutory provisions at issue fell outside the scope of these general enforcement powers."  *Hendrickson*, 992 F.3d at 967–68.  *Hendrickson* did not undermine *Petrella*'s validity but instead distinguished it on the facts.  The statute in *Hendrickson* explicitly identified a government official/entity authorized to enforce its provisions, where the statute in *Petrella* did not.  *Id.*  Here, as in *Petrella*, there is no dispute Governor Polis has general enforcement authority.  Similarly, there is no indication that Article 74—which is silent as to who may enforce it—falls outside the scope of Governor Polis's general enforcement powers.  Thus, Governor Polis rests within *Petrella*'s holding permitting a governor to be sued when challenging a statute lacking a specified enforcer.

Regarding Governor Polis's intent to enforce Article 74, Plaintiffs concede the Governor has not exhibited the same zeal for enforcing Article 74 as the Attorney General.  However, there has been no need for Governor Polis to enforce Article 74 because the Attorney General has thus far done so for him.  This could change if the Attorney General is enjoined from enforcing Article 74 or if a new Attorney General is elected that chooses not to enforce it.  Under either circumstance, there is nothing to prevent Governor Polis from enforcing Article 74 and the Tenth Circuit recently noted "[w]hen there is some chance that the governor may act to enforce a statute, however, some courts have been willing to retain the governor as a named defendant."  *Fowler v. Stitt*, 104 F.4th 770, 783 (10th Cir. 2024) (quotation omitted), *vacated on other grounds* 145 S. Ct. 2840 (2025).

Based on the foregoing, Governor Polis is a proper defendant in this case.[9]

---

[9] If Governor Polis were to unconditionally stipulate that he will not seek to enforce Article 74

**III.    While Not Necessary at This Stage, Plaintiffs Have Shown Impermissible Vagueness.**

The Complaint states a plausible claim for relief and thus survives Defendants' arguments.

**A.    Defendants' Vagueness Argument Improperly Challenges the Merits of the Claim Rather than the Existence of a Claim.**

On a Rule 12 motion, the Court determines the sufficiency of the Complaint, not whether a Plaintiff may ultimately prevail on a claim. *Sherman v. Trinity Teen Sols., Inc.*, No. 20-cv-215-SWS, 2024 WL 6082163, 2024 U.S. Dist. LEXIS 246948, at *5 (D. Wyo. Dec. 4, 2024) ("The Court's function when considering a Rule 12(b)(6) or Rule 12(c) motion is not to weigh potential evidence that the parties might present at trial.  Instead, the Court examines the legal sufficiency of the complaint, and the motion should be granted only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff.") (quotations omitted).

Similarly, under Rule 12(b)(1), the Court's only task is to determine whether the plaintiff has pleaded sufficient facts to establish that the Court has jurisdiction. *Miller v. Roberts*, 548 F. Supp. 2d 1227, 1231 (N.D. Okla. 2008) ("Rule 12(b)(1) motions should not be treated as motions for summary judgment under Rule 56 unless the merits of the case are intertwined with the jurisdictional allegations. . . . Even if the substantive claim and the jurisdictional question arise out of the same statute, a court should not convert a motion under 12(b)(1) into a motion for summary judgment unless the jurisdictional question requires resolution of an aspect of the substantive claim.") (quotations omitted).

---

either directly or indirectly, Plaintiffs would be unopposed to his dismissal as a defendant.

14

Whether Plaintiffs can establish that Article 74 is vague is a question for another day.  As detailed herein, Plaintiffs have established standing and justiciability and this is sufficient to defeat the Motion.[10]  *See supra* Section I.  It is immaterial whether Plaintiffs can ultimately prevail on their claims; all that is required is sufficient pleading.  There are sufficient allegations in the Complaint to state a colorable claim, and accordingly, the Court should disregard Defendants' merits-based arguments on vagueness and deny the Motion.

### B.    Even if the Court Considers the Merits, Article 74 is Unconstitutionally Vague.[11]

A statute is void for vagueness if it: (1) fails to give "fair notice of conduct that is forbidden or required"; or (2) is "so standardless that it authorizes or encourages seriously discriminatory enforcement." *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 253 (2012) (quotation omitted); *United States v. Lesh*, 107 F.4th 1239, 1247 (10th Cir. 2024) (recognizing the "two independent reasons" a law may be vague).

The Supreme Court has underscored that notice is a "fundamental principle in our legal system." *FCC*, 567 U.S. at 253.  Contrary to Defendants' assertion, a statute's constitutionality is

---

[10] While Plaintiffs believe the allegations in the Complain are sufficient to survive Defendants' challenges under Fed. R. Civ. P. 12(b)(1) and (b)(6), to the extent the Court identifies any pleading deficiencies, Plaintiffs ask the Court to grant them leave to file an amended complaint to make any necessary revisions.  Moreover, to the extent the Court determines the merits issues are currently ripe for determination, and Plaintiffs contend they are not, Plaintiffs request that the Court order additional briefing on these highly complex merits issues.

[11] In response to Defendants' footnote 13, *see* Motion at 21, Plaintiffs do not contend the Colorado Constitution imposes a materially different legal standard when it comes to vagueness and thus intend for their arguments to apply equally to the due process claims under the Federal and Colorado Constitutions.

not salvaged merely because some conduct "clearly falls within the provision's grasp." *Johnson v. United States*, 576 U.S. 591, 602–03 (2015). The degree of vagueness tolerated "depends in part on the nature of the enactment," *Hoffman Ests.*, 455 U.S. at 498–99, with the Constitution tolerating a greater degree of vagueness for statutes that are merely "economic regulations" compared to statutes imposing civil or criminal penalties. *See id.* While criminal statutes face the highest level of scrutiny, the Supreme Court has explained the fact a particular law is civil and not criminal does not necessarily insulate it from robust scrutiny, especially where liberty or property interest are at stake as they are here. *Giaccio v. Pennsylvania*, 382 U.S. 399, 402 (1966) ("Both liberty and property are specifically protected by the Fourteenth Amendment against any state deprivation which does not meet the standards of due process, and this protection is not to be avoided by the simple label a State chooses to fasten upon its conduct or its statute."); *see Sessions v. Dimaya*, 584 U.S. 148, 183–85 (2018) (Gorsuch, J., concurring). Although Article 74 does not punish violators with a crime, it imposes monetary penalties of up to $50,000 and thus necessitates a higher level of notice to comport with due process. *See Sessions*, 584 U.S. at 183–85 (Gorsuch, J., concurring).

Article 74 punishes anyone who "intentionally" violates one of its provisions with a civil penalty of up to $50,000. § 24-74-107(1). It remains unclear whether this intentionality requirement adds to, subtracts from, or otherwise modifies § 24-74-103(1) which prohibits disclosing PII "for the purpose of investigating for, participating in, cooperating with, or assisting in federal immigration enforcement." Article 74 is ambiguous on the issue of whether an individual is liable if they intentionally disclose PII or whether the disclosure must also be made with the intent to further federal immigration enforcement. For this reason, Article 74's inclusion

16

of a scienter requirement provides little comfort because it is impossible to know what intent is required.  The lack of clarity on this point alone necessitates the Court's intervention.  *See supra* n.1.

Article 74 also contains language professing that it "shall not interfere" with certain federal law-enforcement activities.  Nevertheless, the Attorney General sued an MCSO deputy for disclosing PII while working on a joint task force.  This introduces another layer of uncertainty: does Article 74 provide a safe harbor whenever information is shared "in furtherance of" a federal task force, and if so, how is that purpose determined—by the sharer's subjective intent, by a supervisor's characterization, or by an after-the-fact assessment by state officials?  *See Grayned v. City of Rockford*, 408 U. S. 104, 108–09 (1972) ("A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis.") (footnote omitted).

Article 74 also invites arbitrary enforcement.  The Attorney General sued Deputy Zwinck and investigated the MCSO but has not sued other state officials who appear to have violated Article 74.  *See, e.g.*, *Moss v. Polis*, No. 2025CV32001, 2025 Colo. Dist. LEXIS 1430, at *11–12 (Denver Dist. Ct. July 9, 2025) (issuing preliminary injunction against Governor Polis enjoining him from directing staff to comply with a federal subpoena because the Governor's directive likely violates Article 74), attached as Exhibit 1.[12]

Finally, it bears repeating that Defendants cannot save Article 74 by pointing to instances

---

[12] The facts of this apparent discrepancy, together with other actions and inactions taken by the Defendants, create fact questions on key issues that, notwithstanding the other arguments contained herein, preclude dismissal on Rule 12.

where its application might be clear. *Johnson* squarely rejects the argument that a law with some obvious applications makes it constitutional. 576 U.S. at 602–03 ("[A]lthough statements in some of our opinions could be read to suggest otherwise, our holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp. For instance, we have deemed a law prohibiting grocers from charging an "unjust or unreasonable rate" void for vagueness—even though charging someone a thousand dollars for a pound of sugar would surely be unjust and unreasonable.") (citing *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921)). The vagueness inquiry looks to whether the statute, as a whole, provides fair notice and guards against arbitrary enforcement—and Article 74 does neither.

## IV.    Federal Law Preempts Article 74.[13]

The Constitution created a system embodying the "principle that both the National and State Governments have elements of sovereignty the other is bound to respect." *Arizona v. United States*, 567 U.S. 387, 398 (2012) (citations omitted). However, the Supremacy Clause makes clear that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. Accordingly, Congress may enact legislation explicitly or implicitly preempting state law. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S.

---

[13] Similar to the vagueness claims, Plaintiffs do not believe it necessary to show that they will prevail on the merits of their preemption claim in response to a motion under Rule 12(b)(6) challenging the sufficiency of the Complaint's allegations. *See supra* Section III.A. Plaintiffs have alleged more than enough facts for their preemption claim to move past the pleading stage.

18

363, 372 (2000) (citations omitted).

There are three ways federal law can preempt state law: express preemption, field preemption, and obstacle preemption.  At this stage, Plaintiffs need allege only one of these theories to survive a motion to dismiss.  *See Kalshiex, LLC v. Hendrick*, No. 2:25-cv-00575-APG-BNW, 2025 WL 1587682, 2025 U.S. Dist. LEXIS 110959, at \*18–19 (D. Nev. June 3, 2025).  In this case, swaths of Article 74 are expressly preempted by 8 U.S.C. §§ 1373 and 1644. [14]

### A.    Aspects of Article 74 Are Expressly Preempted by § 1373.

Express preemption "occurs when the language of the federal statute reveals an express congressional intent to preempt state law."  *Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 486 (10th Cir. 1998).  Congressional intent for § 1373 to preempt state law is clear:

> ***Notwithstanding any other provision of*** . . . ***State***, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

§ 1371(a) (emphasis added). [15]  The key phrase "[n]otwithstanding any other provision" of state law indicates Congress's intent that federal law supplant all other law.  Courts have routinely found the use of "notwithstanding" to be clear evidence of an intent to preempt state law.  *See, e.g.*, *Fed. L. Enf't Officer s Ass'n v. AG N.J.*, 93 F.4th 122, 134 (3d Cir. 2024) (holding it "[wa]s difficult to

---

[14] Because these two statutes are functionally the same, Plaintiffs will refer simply to § 1373.

[15] Upon the creation of the Department of Homeland Security, the functions of Immigration and Naturalization Services were transferred to multiple agencies.  *See D.A. v. United States*, 663 F. Supp. 3d 715, 732–33 (W.D. Tex. 2023) ("INS has since dissolved and its functions transferred to various organizations including CBP, ICE, DHS, and ORR.").

imagine" a clearer statement of preemption than 18 U.S.C. § 926C(a)'s use of the phrase "[n]otwithstanding any other provision of the law of any State or any political subdivision thereof") (quotation omitted); *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 312 (5th Cir. 2023) (Section 1623(a) contains an express preemption clause. It directs that '[n]otwithstanding any other provision of law . . . .'").

As an initial matter, Defendants' reliance on the presumption against preemption is unsupported in light of § 1373's unequivocal language noted above. *See Thornton v. Tyson Foods, Inc.*, 28 F.4th 1016, 1023–24 (10th Cir. 2022) (collecting cases in which the Supreme Court and Tenth Circuit have refused to apply the presumption in the case of express preemption). But their reliance also fails for an additional reason: there is no presumption against preemption "when the State regulates in an area where there has been a history of significant federal presence," *United States v. Locke*, 529 U.S. 89, 108 (2000), with immigration being a prime example. *See Arizona*, 567 U.S. at 394 ("The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens.") (citations omitted).

Defendants also insist, unpersuasively, that there is no conflict between Article 74 and § 1373. *See* Motion at 26 n.13. Article 74 prohibits the sharing of PII for the purpose of cooperating or assisting with federal immigration enforcement. But § 1373(a) ensures that state and local officials may transmit "information regarding the citizenship or immigration status, lawful or unlawful, of any individual" with federal immigration agencies regardless of any intention on the official's part. While these statutes are not mutually exclusive in their entirety, there is an inescapable conflict even if the Court interprets "information regarding the citizenship or immigration status" as narrowly as possible. *See* § 24-74-102(1) (defining PII to include

20

"immigration or citizenship status").

Defendants further suggest Article 74 avoids any conflict with federal law because it contains carveouts for compliance with federal law. Motion at 25–26. While Article 74 includes a safe harbor permitting information sharing when required under federal law, *see* § 24-74-103(1), Defendants' argument misreads § 1373 and the statutory scheme created by Congress. Section 1373 does not require state or municipal employees to share information with federal immigration agencies. *See City of El Cenizo v. Texas*, 890 F.3d 164, 180–81 (5th Cir. 2018) (noting § 1373 was set up to be voluntary). Therefore, Article 74's exceptions do not apply because § 1373 does not obligate Plaintiffs to share information with federal immigration agencies, rendering any carveout for compliance with federal law inapplicable. Given § 1373(a)'s clear intent to preempt state law, the Supremacy Clause requires Article 74 to yield to the extent it conflicts with federal law.

**B.     Section 1373 Does Not Run Afoul of the Tenth Amendment.**

Defendants raise two additional arguments under the Tenth Amendment to defeat preemption. First, they argue § 1373 violates the anti-commandeering doctrine by removing Colorado's choice of whether to expend resources on assisting with federal immigration enforcement. Motion at 29. Second, they argue § 1373 cannot validly preempt state law because it does not regulate private parties. *Id.* at 28 (citing *Murphy v. NCAA*, 584 U.S. 453, 477 (2018)).

*1.      The Anti-Commandeering Doctrine is Inapplicable.*

At its core, the anti-commandeering doctrine embodies the principle that "Congress may not simply commandeer the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program. *New York v. United States*, 505 U.S. 144, 161 (1992)

21

(quotation omitted).

The doctrine is not applicable here because § 1373 does not <u>require</u> states or local governments to affirmatively enact any laws, implement any programs, or affirmatively assist in federal immigration enforcement.  Rather, it merely <u>prohibits restrictions</u> on state and local officers' ability to share immigration-status information with federal authorities.  This distinction is critical.  *See City of New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999) (holding that § 1373 does not commandeer because it "has not compelled state and local governments to enact or administer any federal regulatory program" or "affirmatively conscripted states, localities, or their employees into the federal government's service"); *New York v. United States DOJ*, 951 F.3d 84, 113–14 (2d Cir. 2020) (reaffirming *City of New York*'s holding that § 1373 does not violate Tenth Amendment); *see also Printz v. United States*, 521 U.S. 898, 917–18 (1997) (finding statutes "which require only the provision of information to the Federal Government," did not pose the same question as statutes resulting in "the forced participation of the States' executive in the actual administration of a federal program").

In sum, due to the lack of any obligation imposed on states or their officials to implement a federal program and the fact § 1373 is about information sharing and not actual implementation, the anti-commandeering doctrine does not apply to these facts.

### 2.    *Section 1373 is a Valid Means of Preemption.*

Defendants rely on *Murphy* for the proposition that the Constitution only affords Congress the authority to "regulate individuals, not States."  *Murphy*, 584 U.S. at 472.  Defendants fail to place *Murphy* and § 1373 in the proper context.

In *Arizona v. United States*, the Supreme Court held a federal law dictating when a state

22

officer could arrest an individual preempted a state statute granting arrest authority under a greater

set of circumstances than what federal law permitted.   567 U.S. at 407.   Notably absent from

*Arizona* is any concern that the federal law was invalid for the reasons Defendants now argue,

despite the fact the federal law regulated the powers and authority of state and local officers.

Defendants cannot square their conception of *Murphy* with the decision in *Arizona*.   Nor can

Defendants argue the court in *Murphy* was unaware of *Arizona*'s holding, as the majority cited

*Arizona* without casting any doubt as to its validity.  *See Murphy*, 584 U.S. at 479.[16]

Moreover, to assess who/what federal law regulates, the Court must look to the statutory

scheme as a whole and not § 1373 in isolation.  *See, e.g.*, *Reno v. Condon*, 528 U.S. 141, 144

(2000) (determining individual provisions regulating states were nevertheless a valid means of

preemption because other provisions in the law applied to private actors).   When looking at the

entirety of the law surrounding § 1373, there is little doubt Congress intended to regulate both

states and private actors.  *See* 104 Pub. L. 208.

## VI.    Plaintiffs Request Proper Declaratory Relief

While the Declaratory Judgment Act may not provide a cause of action, Plaintiffs' request

for relief under the Act was styled as a stand-alone Count for purposes of making clear exactly the

relief they seek.   Defendants do not otherwise argue that the declaratory relief sought in the

Complaint is improper or unavailable.  *See generally* Motion at 30.   Therefore, regardless of

whether the Court prefers the claim in a Count or simply in a prayer for relief, Plaintiffs are entitled

---

[16] Defendants also rely on Judge Kane's decision in *Colorado v. United States DOJ*, however, Judge Kane explicitly stopped short of ruling § 1373 violated the Tenth Amendment and notably did not address the decision in *Arizona*.   455 F. Supp. 3d 1034, 1060 (D. Colo. 2020).

to seek the full scope of the injunctive relief detailed in the Complaint.  *See* Complaint ¶¶ 163–68, at Prayer for Relief.

Based on the foregoing, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss and grant any such relief the Court deems proper.

Respectfully submitted this 4th day of December, 2025.

*/s/  Todd M. Starr*
Todd M. Starr, Esq.
John Rhoads, Esq.
Mesa County Attorney's Office
Dept 5004, P.O. Box 20,000
544 Rood Ave
Grand Junction, CO 81502
(970) 244-1612
todd.starr@mesacounty.us
john.rhoads@mesacounty.us

and

*/s/  Andrew B. Clauss*
Andrew B. Clauss, Esq.
Chris W. Brophy, Esq.
Jeana M. Mason, Esq.
Jacob W. Carruthers, Esq.
DINSMORE & SHOHL LLP
1775 Sherman Street, Suite 2600
Denver, Colorado 80203
(303) 831-6971
andrew.clauss@dinsmore.com
chris.brophy@dinsmore.com
jeana.mason@dinsmore.com
jacob.carruthers@dinsmore.com

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically using the CM/ECF system and served via that system on all counsel of record.


*/s/ Stella LaRoe*
Legal Assistant, Dinsmore & Shohl LLP