# EXHIBIT 1

<table>
<tr><td>

**DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**
Denver City and County Building
1437 Bannock Street, Denver, CO 80202

Plaintiffs:

**SCOTT MOSS, in his individual capacity, COLORADO AFL-CIO, and TOWARDS JUSTICE,**

and

Intervenor-Plaintiff:

**COLORADO WORKERS FOR INNOVATIVE AND NEW SOLUTIONS**

v.

Defendant:

**JARED POLIS, in his official capacity**

</td><td>

DATE FILED
July 9, 2025  1:47 PM
CASE NUMBER: 2025CV32001

▲ COURT USE ONLY ▲

Case Number: 25CV32001

Division: 215

</td></tr>
</table>

## ORDER: PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION

THIS MATTER comes before the Court on Plaintiffs' Motions for Preliminary Injunction.  The Court held an evidentiary hearing, made findings on the record thereafter, and issued a preliminary injunction.  Those findings are incorporated in this written order.  The Court notes that this order does not address every issue raised by the parties, but instead is intended to elaborate on the bases for the Court's decision to issue a preliminary injunction, but limit its scope.

### BACKGROUND/ISSUES

On April 24, 2025, the Colorado Department of Labor and Employment ("CDLE") received an 'Immigration Enforcement Subpoena' from Homeland Security Investigations ("HSI").  The subpoena requested the production of a range of information, including personally identifying information ("PII"), relating to thirty-five 'sponsors' of unaccompanied alien children ("UAC").  The asserted intent was to allow HSI to "locate the sponsors" and then "ensure that these children are appropriately located, properly cared for, and are not subjected to crimes of human trafficking or other forms of exploitation."  Ex. 1 at 4.

Pursuant to standard procedures, the subpoena was forwarded by CDLE to both the Attorney General and Governor's offices for review.  According to CDLE's Executive Director, Joe

1

Barela, his department is always concerned about requests for PII, but in this instance was also aware of the potential conflict with a Colorado statute which provided that state agency employees

> shall not disclose or make accessible, including through a database or automated network, personal identifying information that is not publicly available information for the purpose of investigating for, participating in, cooperating with, or assisting in federal immigration enforcement, including enforcement of civil immigration laws and 8 U.S.C. sec. 1325 or 1326, except as required by federal or state law . . . or as required to comply with a court-issued subpoena, warrant, or order.

C.R.S. § 24-74-103(1). The interplay between the subpoena and statute, including as amended, was a key issue for the Court to determine.

Much of the substance of the statute was originally passed during the 2021 legislative session, but it was amended—and as amended signed into law by the Governor on May 23, 2025— approximately one month after the subpoena was issued.  The amendment broadened the scope of state employees subject to subsection 103(1), by adding 'political subdivision employees,' and also added subsection 103(2).  Subsection 103(2) clarified that the provisions of the statute "shall not interfere with criminal investigations or proceedings that are authorized by judicial process or to restrict a state agency employee or political subdivision employee from fully investigating, participating in, cooperating with, or assisting federal law enforcement agencies in criminal investigations."

A state agency employee who intentionally violates the statute is subject "to an injunction and is liable for a civil penalty of not more than fifty thousand dollars for each violation."  § 24-74-107(1).

The Division of Labor and Statistics ("DLSS") is within CDLE.  Its Director, Scott Moss, was initially informed that the Governor's office would not order production of the information sought in the subpoena.  Mr. Moss was of the strongly-held view that complying with the subpoena would violate the statute.  However, on June 2, Mr. Moss was notified that the Governor had now decided that CDLE would produce the information sought by HSI.  The following day, Mr. Moss was informed that DLSS was required to provide the information for disclosure by June 6.  Shortly thereafter, Mr. Moss filed this lawsuit, requesting a temporary restraining order and preliminary injunction against Governor Polis, precluding him from ordering state agency employees to disclose PII pursuant to the subpoena.

Subsequently, Plaintiffs Colorado AFL-CIO and Towards Justice joined Mr. Moss in an amended complaint.  Colorado Workers for Innovative and New Solutions ("WINS") also intervened as a plaintiff in the matter pursuant to Rule 24.

**LEGAL STANDARDS**

A plaintiff "must have standing" for a court to have jurisdiction over a dispute; this is a "threshold issue that must be satisfied" before a court may decide a case on the merits.

2

*Ainscough v. Owens*, 90 P.3d 851, 855 (Colo. 2004).  To establish standing, a plaintiff must show they have suffered an injury-in-fact to a legally protected interest.  *Wimberly v. Ettenberg*, 570 P.2d 535, 539 (Colo. 1977).  The injury-in-fact element of standing "does not require that a party undergo actual injury" so long as an "administrative action threatens to cause" such an injury. *O'Bryant v. Pub. Util. Comm'n of State of Colo.*, 778 P.2d 648, 653 (Colo. 1989).  Standing is not conveyed "by the remote possibility of a future injury nor an injury that is overly 'indirect and incidental' to the defendant's action." *Ainscough*, 90 P.3d at 856.  In Colorado, litigants "benefit from a relatively broad definition of standing." *Wimberly*, 570 P.2d at 539.

To have standing to assert rights of third parties not before the court, the "parties before the court must demonstrate injury to themselves sufficient to guarantee concrete adverseness." *People v. Rosburg*, 805 P.2d 432, 435 (Colo. 1991).  Additionally, at least one of the following factors must be present to establish third-party standing: "(1) a substantial relationship between the parties before the court and the third parties; (2) the difficulty or improbability of the third parties in asserting an alleged deprivation of their rights; or (3) the need to avoid dilution of third-party rights in the event that standing is not permitted." *Id.*  Finally, a party seeking to establish standing on behalf of parties not before the court must show that the third-parties have a right or interest that has "been arguably abridged by the challenged governmental action." *Id.*

To grant a request for a preliminary injunction, a trial court "must find that the moving party has demonstrated" the following six factors: (i) a reasonable probability of success on the merits; (ii) a danger of real, immediate, and irreparable injury which may be prevented by injunctive relief; (iii) that there is no plain, speedy, and adequate remedy at law; (iv) that the granting of a preliminary injunction will not disserve the public interest; (v) that the balance of equities favors the injunction; and (vi) that the injunction will preserve the status quo pending a trial on the merits. *Rathke v. MacFarlane*, 648 P.2d 648, 653–54 (Colo. 1982).  Preliminary injunctive relief "should not be indiscriminately granted . . . it should be granted sparingly, cautiously, and with the trial court's full conviction of the urgent necessity for the relief." *Bill Barrett Corp. v. Lembke*, 488 P.3d 390, 394 (Colo. App. 2018).

**ANALYSIS**

The subpoena—on its face—was not issued as part of a criminal investigation.  The subpoena was from a Special Agent with HSI, which was apparently assisting ICE with immigration matters involving UACs.  *See* Ex. 4.  It was an administrative subpoena, rather than one issued via judicial process.  Further, a checkbox indicating whether the subpoena is "in regard to an investigation involving Child Exploitation and/or transmission of Child Pornography via the internet" was left unchecked.  Ex. 1 at 4.  The Court was not persuaded that this omission was due to the subpoena being served electronically.

The subpoena states that production of the records is required "in connection with an investigation or inquiry relating to the enforcement of U.S. immigration laws" and to ensure UACs are "appropriately located, properly cared for, and are not subjected to crimes of human trafficking or other forms of exploitation." *Id.*  Thus, the subpoena is analogous to, and is a means of achieving, a 'welfare check'; it is several steps removed from a criminal investigation. There is nothing to indicate that any of the UAC sponsors are thought to have committed crimes,

or that any specific UAC has been criminally exploited.  In fact, the evidence before the Court was that no one in CDLE or the Governor's office, with the potential exception of the Governor himself, interpreted the subpoena to be part, or in furtherance, of a criminal investigation. Significantly, there were no communications with HSI seeking clarification about the subpoena or its purpose.

The Court reiterates its conclusion stated at the end of the preliminary injunction hearing: compliance with the subpoena would violate the statutory prohibition on providing PII for immigration enforcement.  Having reached this conclusion, the more difficult issues for the Court were interrelated ones of standing and the scope of injunctive relief.

I.    Mr. Moss

The Court initially looks to whether Mr. Moss has established both individual standing and third-party standing.

First, Mr. Moss demonstrated an injury-in-fact.  Despite assurances that he did not have to actively participate in the disclosure of PII pursuant to the subpoena, there was persuasive testimony that Mr. Moss was responsible for the actions of his Division staff, several of whom also expressed concerns that complying with the subpoena would violate the statute.  Further, there was also credible testimony that Mr. Moss would inevitably suffer reputational damage within the community he serves if he complied with the Governor's directive, and alternatively would be harmed professionally if he refused an order from the Governor.  This situation, where each choice available to Mr. Moss reasonably appeared to result in some form of harm, satisfies the injury-in-fact standard.

Second, the injury to Mr. Moss is to a legally protected interest.  The penalty provision in subsection 107(1) creates such an interest. Failure to comply with the statute risked imposition of substantial monetary penalties.

Thus, Mr. Moss established individual standing.  And, given the "substantial relationship between the parties before the court and the third parties [DLSS employees]," and the credible testimony that the rights of these employees had also been "arguably abridged by the challenged governmental action," Mr. Moss also established third-party standing for his DLSS employees. *See Rosburg*, 805 P.2d at 435.

Mr. Moss did not, however, establish third-party standing for the UAC sponsors, nor for division heads or other employees outside of DLSS.  While Mr. Moss clearly feels strongly about protecting the PII of the sponsors and others, his responsibilities did not extend beyond his own division.  Presumably, that is one reason other Plaintiffs became involved in the case, to which the Court now turns.

II.    Colorado AFL-CIO and WINS

Colorado AFL-CIO and WINS failed to make a persuasive showing that employees they represent in CDLE share the same objections to complying with the subpoena as Mr. Moss and

other DLSS employees.  A plaintiff "must be able to show" that the third parties have a right or interest that has "been arguably abridged by the challenged governmental action." *Id.*  Ms. Byrne, the President of WINS, testified to a single anonymous employee who reported being asked to provide PII to respond to the subpoena.  She could not say if this person objected to doing so.  Whether analyzed in terms of standing or burden of proof, there was an insufficient showing to warrant expanding injunctive relief outside DLSS.

> III.    Towards Justice

Towards Justice argued that it had standing under *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), claiming that it has already reallocated organizational resources and will alter its intake and referral processes in anticipation of the disclosures from CDLE pursuant to the subpoena. But the Supreme Court has since clarified that *Havens* "does not stand for the expansive theory that standing exists when an organization diverts its resources in response to a defendant's actions.  *Havens* was an unusual case, and this Court has been careful not to extend the *Havens* holding beyond its context." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 370 (2024).

Additionally, Mr. Seligman, who testified on behalf of Towards Justice, stated that his organization primarily makes referrals to DLSS.  Given the Court's injunction against DLSS's participation, further standing analysis is unnecessary, except to note that Towards Justice did not demonstrate that any of its clients had been UAC sponsors.  Therefore, Towards Justice did not establish third-party standing to assert claims on behalf of the subjects of the subpoena.

> IV.    Scope of Injunction

Mr. Moss and his DLSS employees demonstrated a reasonable probability of success on the merits of their claim—the subpoena does not meet the criminal investigation exception for disclosure of PII, making it more likely than not that they were being directed to violate the statute.

As to the second and third *Rathke* factors, Mr. Moss has shown that he and his staff face a danger of real, immediate, and irreparable injury for which there is no plain, speedy, and adequate remedy at law.  Indeed, the statute itself contemplates injunctive relief. *See* § 24-74-107(1). Should they comply with the Governor's directive, they risk incurring a civil penalty of up to fifty thousand dollars per violation, in addition to reputational consequences.  If they ignore the Governor's order, they risk significant professional consequences.  No remedy short of injunctive relief is adequate.

Turning to the fourth element—the public interest—the legislature has made that determination. Thus, enjoining Governor Polis from ordering DLSS employees to violate the statute does not disserve the public interest; rather, an injunction effectuates what the legislature has determined is in the public interest.  The balance of equities favors granting an injunction—Mr. Moss and his employees face significant harm if forced to choose between two undesirable options: defy the Governor's order, or potentially violate the law.

Finally, at least with respect to responsive PII within the control of DLSS, a preliminary injunction will preserve the status quo pending a trial on the merits.

## CONCLUSION

Consistent with the foregoing, Governor Polis is preliminarily enjoined from ordering Mr. Moss or his staff at DLSS to comply with the April 24, 2025 Subpoena from HSI.

DATED AND ORDERED: JULY 9, 2025

BY THE COURT:

Judge A. Bruce Jones
Denver District Court