**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-02460-GPG-STV

Todd Rowell, in his individual capacity,
MATTHEW KING, in his individual capacity, and
CURTIS BRAMMER, in his individual capacity,


      Plaintiffs,

v.

PHILIP WEISER, in his official capacity as the
Attorney General for the State of Colorado, and
JARED POLIS, in his official capacity as the
Governor for the State of Colorado,

      Defendants.

---

**REPLY IN SUPPORT OF MOTION TO DISMISS BY ATTORNEY GENERAL
PHILIP WEISER AND GOVERNOR JARED POLIS**

---

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................1

ARGUMENT......................................................................................................1

I.    Plaintiffs' claims are not justiciable. ...............................................................1

      A.    Plaintiffs lack standing. .............................................................1

            1.    No constitutional interests are implicated.....................................2

            2.    Plaintiffs' arguments regarding a credible threat of future enforcement are without merit..........................................................3

            3.    The Court need not presume that Plaintiffs will prevail on the merits, but Plaintiffs lack standing even under such a presumption. ..........................................................6

      B.    Plaintiffs' claims are not ripe. ....................................................6

II.    Governor Polis enjoys sovereign immunity.............................................8

III.    Plaintiffs cannot establish that the challenged laws are void for vagueness......11

      A.    Plaintiffs' vagueness challenge can be decided as a matter of law. .......11

      B.    Article 74 is not unconstitutionally vague. ..............................12

IV.    Federal law does not preempt the challenged laws..........................................14

      A.    There is no express preemption. ...........................................15

            1.    Article 74 does not conflict with any limitations imposed by federal law.......................................................................15

            2.    Plaintiffs do not identify any valid preemption provisions. ............15

      B.    Accepting Plaintiffs' preemption argument would violate the Tenth Amendment. ..........................................................16

      C.    Plaintiffs have forfeited their obstacle preemption claim. .......................18

V.    Plaintiffs concede that the Declaratory Judgement Act does not provide a cause of action..................................................................................19

CONCLUSION .................................................................................................19

**INTRODUCTION**

Plaintiffs' response confirms that their Complaint fails to state a claim and should be dismissed. First, their claims are not justiciable because Plaintiffs lack standing and their claims are not ripe. Plaintiffs fail to identify any certainly impending injury to establish standing, and their argument that the challenged laws "implicate constitutional interests" merely because they impose a monetary fine on intentional violations is meritless. Dkt. 23 ("Opp.") at 5–6. Similarly, the claims are not ripe because they rely purely on speculation about future events that may not occur at all. And as to the Governor, Plaintiffs' claims are barred by sovereign immunity.

Second, the claims fail even if the Court reaches the merits. Plaintiffs do not come close to meeting the heavy burden required to facially invalidate a civil statute as unconstitutionally vague. Their preemption claims fare no better. They rely on a strained reading to manufacture a conflict between state and federal law that does not exist. Additionally, the preemption claims fail because the federal statutes Plaintiffs rely on are not valid preemption provisions. Finally, accepting Plaintiffs' arguments would violate the anticommandeering doctrine under the Tenth Amendment. Accordingly, Plaintiffs' Complaint should be dismissed.

**ARGUMENT**

**I.    Plaintiffs' claims are not justiciable.**

**A.    Plaintiffs lack standing.**

At bottom, Plaintiffs' claims are fatally flawed because they have not suffered an injury in fact. While future injuries may sometimes suffice for standing purposes, such

threatened injury "must be certainly impending" and cannot rely on an "attenuated chain

of possibilities," as Plaintiffs do here. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410

(2013) (citation modified). Mere concern about hypothetical liability for intentionally

violating a civil law—especially in the absence of any stated intention to engage in

conduct proscribed by the statute—is the sort of "speculative" fear that is "not to be

accepted" for purposes of standing. *Babbitt v. United Farm Workers Nat'l Union*, 442

U.S. 289, 298 (1979) (citation modified).

### 1.    No constitutional interests are implicated.

First, Plaintiffs cannot establish an injury in fact by claiming an intent to engage in

conduct "affected with a constitutional interest" that is proscribed by the challenged

laws. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). The only interest

Plaintiffs point to is "punitive action arising from their otherwise constitutionally

permissible employment activit[y]." Opp. at 5. Plaintiffs cite no authority for the claim

that this amounts to a "constitutional interest," nor do they explain how facing legal

liability for violating the law automatically implicates constitutional rights if that violation

occurs in the course of "employment activity." Plaintiffs cite an out-of-circuit case for the

proposition that "a potential fine or penalty implicates constitutional concern[s]." Opp. at

5 (citing *Isaacson v. Mayes*, 84 F.4th 1089, 1099 (9th Cir. 2023)). But the court there

found that plaintiffs—owners of a private business—were suffering an ongoing

economic injury. Their standing "[was] based on their economic interest in providing" a

service, and they "lost money because [the challenged] regulations restrict[ed] what

services they can provide." *Isaacson*, 84 F.4th at 1097. The court did not broadly hold that any potential fine or penalty implicates constitutional interests.

Nor have Plaintiffs shown that any constitutional rights are implicated. The Complaint suggests that the challenged laws violated Plaintiffs' First Amendment rights. Compl. ¶ 50. But as Defendants explained in their Motion to Dismiss, Dkt. 18 ("Mot.") at 19, Plaintiffs' claims do not implicate any First Amendment rights because public employees making statements pursuant to their official duties "are not speaking as citizens for First Amendment purposes." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Plaintiffs offered no response to these arguments, nor did they identify any other constitutional rights implicated by the challenged laws.

Plaintiffs are correct that they may nonetheless bring a facial challenge for vagueness even when constitutional interests are not affected. Opp. at 5. But they still must establish standing, and without showing an injury in fact, they cannot do so.

### 2. Plaintiffs' arguments regarding a credible threat of future enforcement are without merit.

Plaintiffs further argue that they have standing because they can establish a credible fear of prosecution. Opp. at 7–9. But the credible fear of enforcement test cited by Plaintiffs is relevant to a specific type of pre-enforcement challenge—where a plaintiff "alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List*, 573 U.S. at 159 (quoting *Babbit*, 442 U.S. at 298). This test does not apply because, as detailed above, they fail to show how the challenged laws proscribe any constitutionally affected conduct they seek to engage

3

in. And although they raise constitutional claims, "it is the plaintiff's *conduct*, not its *claims*, that must be constitutionally protected." *Brady Campaign to Prevent Gun Violence v. Brownback*, 110 F. Supp. 3d 1086, 1100 (D. Kan. 2015). Accordingly, Plaintiffs have not identified any credible threat that would provide standing for their challenge. *Id*. ("Absent an allegation that the Act impinges on a constitutional right [of Plaintiff], the 'credible threat' standard is not met.").

Nor is the course of conduct alleged arguably proscribed by the statute. As discussed in the motion to dismiss, Mot. at 4, 8, Plaintiffs repeatedly allege that they only collect information as required by state law or to perform their necessary duties and share information with federal officials for criminal investigations or as required by law. Compl. ¶¶ 58–62, 72–73, 80, 84, 91–92, 95, 100, 102, 106–30. They allege they do so for nonimmigration purposes. *Id.* The challenged laws specifically allow this course of conduct. C.R.S. §§ 24-74-103(2), 24-74-104(1), (2).

Even if the credible threat analysis were relevant, applying it only underscores that Plaintiffs are not facing any imminent threat of prosecution. Crucially, Plaintiffs cannot demonstrate any instances of past enforcement against the same conduct as they engage in. Plaintiffs point to the claims brought against former Mesa County Sheriff's Office ("MCSO") Deputy Alex Zwinck as proof of such past enforcement, Opp. at 7–8, yet deny that they engage in the same conduct that led to the suit against Zwinck. The MCSO's own investigation and disciplinary determination found Deputy Zwinck provided information to federal immigration authorities "solely for the purpose of enforcing civil

4

immigration violations".[1] Further, the MCSO found that Zwinck violated state law; that he violated office policy regarding immigration detentions; and that his "lack of awareness to direction" regarding "immigration issues" had "reflect[ed] unfavorably on" the office.[2] This is the conduct that formed the basis of the suit against Deputy Zwinck. *See Colorado ex rel. Weiser v. Zwinck,* Case No. 2025CV30303 (Colo. 21st Jud. Dist. Ct.). Plaintiffs, on the other hand, argue that they collect information *only* as required by state law or to perform their necessary duties, and similarly only share information with federal counterparts for criminal investigations or as required by law. Compl. ¶¶ 58–62, 72–73, 80, 84, 91–92, 95, 100, 102, 106–30. They "regularly" transmit personal identifying information ("PII"), but only for "non-immigration purposes," conduct that is permitted under the challenged laws. Compl. ¶ 59; C.R.S. § 24-74-103; *see also* Opp. at 2 (Plaintiffs obtain and transmit information "for purposes of legitimate state and local law enforcement functions" that are "wholly unrelated to federal immigration enforcement"). In short, Plaintiffs point to past enforcement against *different* conduct but are unable to identify a single instance of prosecution against the "same" conduct they purport to engage in.[3] *Peck v. McCann*, 43 F.4th 1116, 1132 (10th Cir. 2022). And while

---

[1] The MCSO publicly released these documents, and the court may review them for the reasons stated in Mot. at 5, n. 3. https://coag.gov/app/uploads/2025/12/request-for-major-discipline-alexander-zwinck.pdf.

[2] https://coag.gov/app/uploads/2025/12/disciplinary-determination-alexander-zwinck.pdf.

[3] Defendants further note that there is no evidence of any past enforcement on the part of Governor Polis. A plaintiff "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). Accordingly, Plaintiffs must establish standing specifically as to their request for an injunction against Governor Polis. *See Bella Health & Wellness v. Weiser*, 699 F. Supp. 3d 1189, 1205 (D. Colo. 2023) ("[S]tanding is generally evaluated for each claim and as to *each defendant*, not collectively.").

Plaintiffs argue that they need not succeed on all three factors under the credible fear of prosecution analysis, the cited authority explains this was so because the test "is not supposed to be a difficult bar for plaintiffs to clear *in the First Amendment pre-enforcement context*," which is not the case here. *Id.* at 1133 (emphasis added).

> **3.      The Court need not presume that Plaintiffs will prevail on the merits, but Plaintiffs lack standing even under such a presumption.**

Plaintiffs also urge the Court to assume that they will prevail on the merits for the purposes of standing analysis. Opp. at 5. But that presumption applies when "plaintiffs' asserted injury and their claimed constitutional violation were one and the same." *Day v. Bond*, 500 F.3d 1127, 1137 (10th Cir. 2007). It does not apply here, where "the issue of standing is not necessarily determined by the merits determination." *Id.* at 1138. And courts may not "assum[e] jurisdiction based upon a hypothetical legal injury." *Id.* at 1137–1138. Simply put, Plaintiffs conflate their asserted injury—a purported fear of prosecution—with the merits of whether the challenged laws are unconstitutionally vague. Even assuming (incorrectly) that the challenged statutes are vague, Plaintiffs would still fail to establish that they are facing actual, "certainly impending" injury in the form of liability under Article 74 and thus still lack standing. *Clapper*, 568 U.S. at 409.

> **B.      Plaintiffs' claims are not ripe.**

Article III justiciability also demands that a claim be ripe, meaning it "must present a live controversy . . . advanced in a 'clean-cut and concrete form.'" *Kan. Jud. Rev. v. Stout*, 519 F.3d 1107, 1116 (10th Cir. 2008) (quoting *Renne v. Geary*, 501 U.S. 312, 322 (1991)). Plaintiffs do not present such a live controversy and instead seek

"premature adjudication" of the sort of "abstract disagreements" that the ripeness

doctrine seeks to prevent. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495,

1499 (10th Cir. 1995) (quoting *Abbot Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). And

as addressed in Section I.A., Plaintiffs lack sufficiently imminent injury to establish

constitutional ripeness. *Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012).

Plaintiffs argue that they satisfy the first prong of the prudential ripeness inquiry

because the case presents "quintessential legal issues." Opp. at 10. While the first

prong does consider whether an issue is strictly legal, the analysis is broader than this

question alone. *See Sierra Club v. Yeutter*, 911 F.2d 1405, 1416 (10th Cir. 1990)

(Supreme Court ripeness caselaw "cautions against a mechanical interpretation of the

two factor test" and instead applies a "flexible approach"). The Supreme Court has held

that claims lack ripeness even when they present "a purely legal question," where, as

here, "judicial appraisal . . . is likely to stand on a much surer footing in the context of a

specific application." *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 163–64 (1967).

Such is the case here, as Plaintiffs ask the Court to assess the challenged laws in the

context of hypothetical events that may never occur instead of identifying any live

controversy. The other cases relied upon by Plaintiffs are distinguishable and fail to

support a finding of ripeness under the first prong. In *Peck*, the Court concluded that the

matter was "an ideal fit for judicial review" not simply because it raised purely legal

questions, but also because it was "accompanied by a joint statement of stipulated

facts." 43 F.4th at 1134. But this matter lacks such "concrete application to guide [a

court's] analysis." *United States v. Cabral*, 926 F.3d 687, 694 (10th Cir. 2019). Further,

7

both cases Plaintiffs cite are inapposite as they involve First Amendment challenges and repeatedly recognize that ripeness inquiries "are relaxed in the context of facial challenges on First Amendment grounds." *Peck*, 43 F.4th at 1133–34 (quoting *New Mexicans for Bill Richardson,* 64 F.3d at 1500) (citation modified). Again, Plaintiffs' claims do not implicate any First Amendment issues, *see* Mot. at 19.

Plaintiffs also fail to satisfy the second prong of the ripeness inquiry. They assert a hardship in the form of "a credible threat of prosecution," but as already discussed have not established such a threat and instead rely on mere speculation. *See* Section I.A.2. Nor have Plaintiffs plausibly alleged that they "face a direct and immediate dilemma," beyond offering a conclusory assertion lacking any argument as to how the challenged laws impose such a dilemma. Opp. at 11.

Plaintiffs' remaining ripeness arguments fare no better. It is not incumbent upon Defendants to "delineate what factual development" is necessary to render Plaintiffs' unripe claims justiciable, and Plaintiffs do not offer any caselaw to that effect. Opp. at 10. Nor do Defendants argue that Plaintiffs must "actually violat[e] the law and suffer[] prosecution" to establish ripeness. *Id*. Defendants simply argue that Plaintiffs' claims are unripe because they "rest upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation modified).

## II.  Governor Polis enjoys sovereign immunity.

Even if Plaintiffs had standing and their claims were ripe, the claims against the Governor are barred by sovereign immunity, and *Ex parte Young* does not apply.

First, the fact that Article 74 does not specify who may enforce its penalty provision does not create a "particular duty" on the Governor's part to do so, as required to satisfy the *Young* test. Reading statutory silence as creating a particular enforcement duty for any state official with general enforcement powers would violate the rule that "a mere general duty to enforce the law" does not suffice for *Ex parte Young*. *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021) (citation modified).

Contrary to Plaintiffs' contention, the Tenth Circuit's decision in *Petrella v. Brownback*, 697 F.3d 1285 (10th Cir. 2012), did not hold otherwise. Indeed, *Petrella* was an Article III standing case. In assessing the causation prong of standing, it first cited *Young* for the general rule that the "proper vehicle for challenging the constitutionality of a state statute . . . is an action against the state officials responsible for the enforcement of that statute." *Id.* at 1293–94. It then observed that the Governor of Kansas had general responsibility to enforce the state's laws, implicitly holding that this sufficed for standing. *Id.* at 1294. But nowhere did it address sovereign immunity or the Tenth Circuit's test for *Ex parte Young*.[4]

Further, since *Petrella*, the Tenth Circuit has repeatedly cabined its holding. *See Free Speech Coalition, Inc. v. Anderson*, 119 F.4th 732, 740 (10th Cir. 2024); *Hendrickson*, 992 F.3d at 967–68. In so doing, it has contrasted *Petrella*, which involved a school-funding statute that "did not include any particular enforcement provisions,"

---

[4] That the *Petrella* Court remanded for consideration of the merits does not amount to an implicit holding that the Governor lacked immunity in that case. Because a state can waive sovereign immunity, "a court may raise the issue of Eleventh–Amendment immunity sua sponte but, unlike subject-matter jurisdiction, it is not obligated to do so." *U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008).

with cases in which a plaintiff seeks to sue a state official based on their general enforcement powers even though the statute at issue expressly provides for enforcement by other actors. *Free Speech Coalition*, 119 F.4th at 740; *see also Hendrickson*, 992 F.3d at 967–68. From this, Plaintiffs extrapolate that *Young* allows suit against officials with general enforcement authority whenever the statute at issue does not specify who may enforce it. But the Tenth Circuit has never gone so far as to adopt or apply such a blanket rule. Nor should this Court do so. Plaintiffs' proposed rule would undermine the basic principle that a plaintiff cannot sue a state official simply "'as a representative of the state,'" because that would be "impermissibly 'attempting to make the state a party'" in violation of its sovereignty. *Hendrickson*, 992 F.3d at 965 (quoting *Ex parte Young*, 209 U.S. at 157).

*Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024), does not support allowing suit against the Governor, either. There, the plaintiffs alleged that the governor had "taken actions under color of state law" to effectuate the policy they were challenging, including issuing an executive order that "set the Policy in motion" and on which a state agency relied in applying the policy to the plaintiffs. *Id.* at 783. No such enforcement nexus is alleged here. Though Plaintiffs' Opposition brief repeatedly alleges that "Defendants" have taken action to enforce Article 74, all their allegations relate specifically to acts taken by the Attorney General, not the Governor. Opp. at 8–9 & n.7.

Second, Colorado state law allowing the Governor generally to be named as a defendant in state court lawsuits does not apply here. Respectfully, the courts in this district that have relied on that state court practice erred, because the Eleventh

Amendment does not apply in state court. While Colorado courts generally allow suit against the Governor as the "personification of the state" for litigation purposes, *Raven v. Polis*, 479 P.3d 918, 920–21 (Colo. 2021), adopting that rule in federal court would be directly contrary to the Eleventh Amendment. *See Hendrickson*, 992 F.3d at 965.

Finally, even if this Court were to conclude that the Governor has a "particular duty" to enforce Article 74, he would still be entitled to immunity because Plaintiffs have not alleged any facts showing that the Governor has a demonstrated willingness to enforce it. Article 74 was enacted over four years ago, but Plaintiffs have not pointed to any action by the Governor to satisfy the "demonstrated willingness" prong of *Young*. *Cf. Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250, 1260 (10th Cir. 2018) (plaintiff bears burden of showing sovereign immunity does not bar their claim). For that independent reason, the Governor is entitled to sovereign immunity.

## III.    Plaintiffs cannot establish that the challenged laws are void for vagueness.

Plaintiffs' claims are not justiciable. But even if they were, the challenged laws are not void for vagueness. The Court should dismiss Plaintiffs' claims because they cannot meet the heavy burden of demonstrating that the challenged laws are "'so vague and indefinite as really to be no rule or standard at all.'" *Boutilier v. Immigr. & Naturalization Serv.*, 387 U.S. 118, 123 (1967).

### A.    Plaintiffs' vagueness challenge can be decided as a matter of law.

Plaintiffs' motion appears to argue that the court should not consider Defendants' arguments against their vagueness claims at the Motion to Dismiss stage. Opp. at 14. But dismissal under 12(b)(6) is appropriate here because "[w]hether a statute is

11

unconstitutionally vague is a question of law." *United States v. Coleman*, 609 F.3d 699, 706 (5th Cir. 2010); *see also Am. Ass'n of People with Disabilities v. Herrera*, 2010 WL 3834049, at * 9 (D.N.M. July 28, 2010) (same). Defendants properly challenge Plaintiffs' claims at the motion to dismiss stage, and the Court should dismiss the Complaint. *See Dias v. City of Denver,* 567 F.3d 1169, 1179–80 (10th Cir. 2009) (affirming that a "facial vagueness challenge was properly dismissed for failure to state a claim" under 12(b)(6) because the challenged ordinance was not "vague in all of its applications"); *see also Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 972 (9th Cir. 2003) (similarly affirming dismissal where Plaintiffs made no showing that an enactment was impermissibly vague in all applications).

### B.    Article 74 is not unconstitutionally vague.

Statutes challenged for vagueness enjoy a "presumption" of constitutionality and "'must be upheld unless the court is satisfied beyond all reasonable doubt that the legislature went beyond the confines of the Constitution.'" *United States v. Saffo*, 227 F.3d 1260, 1270 (10th Cir. 2000) (citation modified). The standard is even higher in challenges to civil statutes, which "are subject to less rigorous constitutional standards than criminal statutes." *In re Stewart*, 175 F.3d 796, 811 (10th Cir. 1999) (citation modified). Here, Plaintiffs cannot meet their heavy burden of proving that the challenged laws are so vague that "no standard is specified at all." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 n. 7 (1982) (citation modified); *see Wyo. Gun Owners v. Gray*, 83 F.4th 1224, 1234 (10th Cir. 2023) (a statute is facially vague only

12

when "no set of circumstances exists under which the statute would be valid") (citation modified).

Plaintiffs suggest that this rigorous standard for vagueness challenges against civil statutes should not apply here. Opp. at 16. But none of the authorities they cite dispense with this higher standard, and each is distinguishable. *Johnson v. United States*, 576 U.S. 591, 595–96 (2015), involved a challenge to a sentence enhancement in a criminal statute, and the court expressly noted that "the prohibition of vagueness in criminal statutes" applies "not only to statutes defining elements of crimes, but also to statutes fixing sentences." Similarly, *Giaccio v. State of Pennsylvania*, 382 U.S. 399 (1966), considered a challenge to a statute that assessed costs to acquitted defendants under threat of imprisonment, implicating liberty interests not present here, and was decided long before the Supreme Court established its vagueness analysis for civil statutes in *Village of Hoffman Estates*. And while Justice Gorsuch's noncontrolling concurrence in *Sessions* expressed concern about applying the civil vagueness standard to statutes permitting serious civil penalties like involuntary commitment or home forfeiture, *Sessions v. Dimaya*, 584 U.S. 148, 184 (2018), it does not stand for the proposition that civil statutes imposing a monetary penalty "necessitate[] a higher level of notice," as Plaintiffs claim. Opp. at 16.

Plaintiffs' other vagueness arguments fare no better. Their assertion that the challenged laws invite arbitrary enforcement, Opp. at 17, is simply a conclusion of law and should therefore be disregarded. *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1144–45 (10th Cir. 2023). Plaintiffs also claim that the charges brought against Deputy

13

Zwinck further demonstrate that Article 74 is unconstitutionally vague, Opp. at 17. But this argument is a red herring, as the "safe harbor" provisions Plaintiffs point to were not at issue for Deputy Zwinck; as MCSO's own internal investigation concluded, Zwinck was not sharing information in furtherance of a federal task force, but rather "solely for the purpose[s] of enforcing civil immigration violations." *See supra* n. 1. In contrast, Plaintiffs' own pleadings repeatedly affirm that they do not share PII for immigration purposes, and their hypothetical questions about the applicability of Article 74's carveout for criminal investigations fail to establish any unconstitutional vagueness. *See Fabrizius v. U.S. Dep't of Agric.*, 129 F. 4th 1226, 1238 (10th Cir. 2025) ("That there may be some borderline question to decide is not fatal to" a statute challenged for vagueness.) (citation modified). Finally, Plaintiffs' argument regarding the challenged laws' scienter requirement, Opp. at 16–17, only undermines their claims of vagueness. "when a statute might otherwise be vague, a scienter requirement mitigates the vagueness and makes the statute constitutional." *Ward v. Utah*, 398 F.3d 1239, 1252 (10th Cir. 2005). In sum, applying the correct standards, the challenged laws are not facially unconstitutional in all their applications. The claims should be dismissed.

## IV.     Federal law does not preempt the challenged laws.

In their response, Plaintiffs only address that the challenged laws are expressly preempted. Opp. at 19. But this claim fails many times over. First, there is no conflict between the challenged laws and federal law. Second, § 1373 is not a valid preemption provision as it regulates state actors, not private actors. Finally, Plaintiffs' reading would violate the anticommandeering doctrine.

14

### A. There is no express preemption.

#### 1. Article 74 does not conflict with any limitations imposed by federal law.

Fundamentally, Plaintiffs' express preemption claim fails because the challenged laws do not mandate or prohibit any action in violation of 8 U.S.C. § 1373. Section 1373 purports to prohibit states from barring their own officials from sharing information regarding immigration status. While the challenged laws do prohibit certain disclosures, they expressly include a carveout for compliance with federal law. C.R.S. § 24-74-103(1). Given this clear deferral to federal law in instances of conflict, the challenged laws, by their own terms, cannot be read as prohibiting the sending of immigration status information as § 1373 prohibits.

Plaintiffs unpersuasively argue that the challenged laws' carveout provisions are "inapplicable" because § 1373 doesn't require any information sharing but only prohibits localities from choosing not to share certain information. Opp. at 20–21. But this argument misreads both the challenged laws and § 1373. Regardless of how it is phrased, § 1373 prohibits states from prohibiting their officials from "sending" information about an individuals' immigration status to immigration enforcement agencies. C.R.S. § 24-74-103(1)'s carveout for sending information "as required by federal or state law" thus forbids state and local officials from prohibiting the sharing of the limited type of information covered by § 1373.

#### 2. Plaintiffs do not identify any valid preemption provisions.

As Defendants demonstrated, Mot. at 28, sections 1373 and 1644 are not valid preemption provisions because they do not regulate private parties. *See Murphy v.*

*NCAA*, 584 U.S. 453, 477 (2018). Courts have repeatedly held that neither provision can validly preempt state law. *See* Mot. at 28 (collecting cases). Faced with this ample precedent, Plaintiffs make the curious argument that *Murphy's* holding is inapplicable in the immigration context. Opp. at 23. But this argument is meritless. Nothing in *Murphy* or elsewhere suggests such an exception. Courts have repeatedly directly relied on *Murphy* in concluding that § 1373 is not a valid preemption provision directly rely on the holding in *Murphy*. *See United States v. California*, 921 F.3d 865, 890 (9th Cir. 2019), *City of Chicago v. Barr*, 961 F.3d 882, 908–09 (7th Cir. 2020); *see also McHenry County v. Raoul*, 44 F.4th 581, 588 (7th Cir. 2022) (rejecting the same argument because the court was "reluctant to endorse [Plaintiff's] argument that *Murphy* did not really mean what it said . . . [t]he Court said at least three times in *Murphy* that a valid preemption provision is one that regulates private actors").

Plaintiffs also argue that § 1373 is a valid preemption provision because some unspecified part of the broader statutory scheme to which it belongs regulates private actors. Opp. at 23. But the Supreme Court rejected this very argument in *Murphy* and held that preemption analysis must focus on the challenged provision, not other parts of the same act. *See Murphy*, 584 U.S. at 479–80.

## B. Accepting Plaintiffs' preemption argument would violate the Tenth Amendment.

Plaintiffs' preemption argument must also be rejected because it would deprive Colorado of the choice of whether to expend state and local resources on assisting with federal immigration enforcement. As numerous courts have already ruled, such an interpretation is foreclosed by the anticommandeering doctrine. *See* Mot. at 29, n. 14.

16

Plaintiffs claim that the anticommandeering doctrine is inapplicable here because § 1373 prohibits, rather than requires, action by state and local officers. Opp. at 22. But their only support is a Second Circuit case that depends significantly on a distinction between federal laws that affirmatively compel actions by states and those that prohibit state action—a distinction the Supreme Court later soundly rejected in *Murphy*. *Compare City of New York v. United State*, 179 F.3d 29, 35 (2d Cir. 1999) ("These Sections do not directly compel states or localities to require or prohibit anything."), *with Murphy*, 584 U.S. at 474–75 (describing as "empty" the distinction between Congress "command[ing] 'affirmative' action" by a state and "prohibiting a State from enacting new laws"). Further, Plaintiffs' reading of § 1373 would still mean "redistribut[ing] local decision-making power" and removing from states the choice of whether to assist in federal immigration enforcement. *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 870 (N.D. Ill. 2018) (aff'd in relevant part). Even if "couched as prohibitions rather than affirmative commands," Plaintiffs' reading of § 1373 would nonetheless constitute a "direct order that dictates what a state legislature may or may not do" in violation of the anticommandeering principle. *Colorado v. U.S. Dep't of Just.*, 455 F. Supp. 3d 1034, 1059 (D. Colo. 2020) (citation modified).

Equally unpersuasive is Plaintiffs' suggestion that the Tenth Amendment is not implicated where statutes require "only the provision of information to the Federal government." Opp. at 22 (quoting *Printz v. United States*, 521 U.S. 898, 917–18 (1997)). But *Printz* declined to address whether statutes mandating information sharing with the federal government violated the Tenth Amendment, as that issue was not before the

17

court. *Id.* at 918; *see also United States v. Illinois*, 796 F. Supp. 3d 494, 524 (N.D. Ill. 2025) (collecting cases holding that "neither *Printz* nor *Reno* recognizes an information-sharing exception to the Tenth Amendment"). More fundamentally, however, Plaintiffs' argument ignores that the challenged laws do not simply regulate information sharing but rather govern the activities of state and local employees as well as data maintained via state and local resources. The state's interest in controlling the activities of its own agents, political subdivisions, and funds is at the core of the state's sovereign powers. *See, e.g.*, *Printz*, 521 U.S. at 930–31 (rejecting distinction between federal efforts to control a state versus its officers); *California*, 921 F.3d at 887, n.11 ("A state's ability to regulate its internal law enforcement activities is a quintessential police power."); *Illinois*, 796 F. Supp. 3d at 532 (the anticommandeering doctrine prevents the federal government from shifting the costs of federal programs to the states). Plaintiffs cannot claim that the anticommandeering principle is "not applicable" in the context of the state's exercise of its sovereign police powers.

### C.    Plaintiffs have forfeited their obstacle preemption claim.

The Complaint alleged both express and obstacle theories of preemption. *See* Compl. at ¶¶ 56–57, ¶¶ 161–62, Mot. at 22–23. Defendants addressed both theories in their Motion. Mot. at 22–30. Plaintiffs' response offers arguments defending only their express preemption claim. Accordingly, they forfeit any arguments in support of their obstacle preemption claims. *See, e.g.*, *Domokos v. Shelter Mut. Ins. Co.*, 416 F. Supp. 3d 1209, 1224 (D. Colo. 2019) ("Failure to develop arguments adequately in the district court results either in forfeiture (if her failure was unintentional) or waiver (if her failure

was intentional." (citation modified) (quoting *McKissick v. Yuen*, 618 F.3d 1177, 1189

(10th Cir. 2010)). Plaintiffs offer no authority to suggest that preemption claims enjoy

special pleading rules, and the case they cite does not support the notion that arguing

one preemption claim protects others from a motion to dismiss. *See* Opp. at 19. In any

event, the Court should dismiss the obstacle preemption claims for the unrebutted

reasons explained in Defendants' Motion. Mot. at 22–30.

## V.    Plaintiffs concede that the Declaratory Judgement Act does not provide a cause of action.

As Plaintiffs conceded, the Declaratory Judgement Act does not provide a

separate cause of action. Opp. at 23. Because Plaintiffs have failed to state any other

valid claim for relief, their request for declaratory relief must also be dismissed.

## CONCLUSION

For the foregoing reasons and those in the Motion to Dismiss, the Court should

dismiss the Complaint.


Dated: December 18, 2025                    Respectfully submitted,

                                            **PHILIP J. WEISER**
                                            Attorney General of Colorado

                                            By: /s/ Sam Wolter
                                            Sam Wolter
                                            *Assistant Attorney General*
                                            David Moskowitz
                                            *Deputy Solicitor General*
                                            Talia Kraemer
                                            *Assistant Solicitor General*
                                            1300 Broadway, 10th Floor
                                            Denver, CO 80203
                                            (720) 508-6000

David.Moskowitz@coag.gov
Talia.Kraemer@coag.gov
Samuel.Wolter@coag.gov

*Counsel for Philip Weiser and Jared Polis*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 18, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Sam Wolter
*Assistant Attorney General*